## COMMONWEALTH vs. RICHARD P. SCHUTTE.

No. 99-P-2073.

Norfolk. June 19, 2001. - October 11, 2001.

Present: LENK, DOERFER, & COHEN, JJ.

*Alcoholic Liquors,* Motor vehicle. *Motor Vehicle,* Operating under the influence. *Evidence,* Medical report, Field sobriety test. *Statute,* Construction. *Practice, Criminal,* Instructions to jury.

General Laws c. 233, § 79G, governing the admissibility in evidence of medical reports, is applicable to all cases, criminal or civil, where the statutory safeguards have been followed. [798]

This court concluded that it was prejudicial error requiring reversal of a conviction of operating a motor vehicle while under the influence of alcohol for the trial judge to exclude a physician's report, not made in the regular course of treatment or examination and offered by the defendant as a medical report pursuant to G. L. c. 233, § 79G, where the report strongly bolstered the defense theory that the defendant failed field sobriety tests because of a balance problem caused by a medical condition, and where the lack of such evidence was a key component of the prosecutor's closing argument. [799-800]

At the trial of a complaint alleging that the defendant operated a motor vehicle while under the influence of alcohol, the judge properly allowed the arresting officer to testify regarding his administration of field sobriety tests to the defendant [800-801], and, in the circumstances, properly excluded from evidence a State police manual relating to the standards for administering such tests [801].

In the circumstances of a criminal trial, the judge did not err in instructing the jury, sua sponte, in accordance with the standards set forth in *Commonwealth* v. *Tuey,* 8 Cush. 1, 2-3 (1851), and *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 101-102 (1973), after they had been deliberating for two hours. [801-802]

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on May 27, 1997.

The case was tried before *Joseph R. Welch,* J.

*Richard F. Benway (Sharon M. Harrington* with him) for the defendant.

*Joseph H. Selby,* Assistant District Attorney, for the Commonwealth.

DOERFER, J. The defendant appeals from his conviction of operating under the influence of intoxicating liquor. We reverse on the ground that the judge erroneously excluded a report from the defendant's physician that was admissible under G. L. c. 233, § 79G. We also briefly discuss other issues.

1. *Evidence at trial.* There was testimony from Officer William Quigley of the Cohasset police that, on May 26, 1997, at about 12:50 A.M., he saw a vehicle being driven erratically. When he stopped the vehicle and approached the driver, later identified as the defendant, he detected a strong smell of alcohol coming from inside the car. He observed that the defendant's eyes were glassy, red, and bloodshot and that the defendant's breath smelled of alcohol. The defendant admitted to having had a couple of beers. When Officer Quigley asked him to perform three field sobriety tests, the defendant told the officer that he had had thirteen ear operations and that his "equilibrium may be off," but, according to Officer Quigley, agreed to do the tests. After having stepped behind his vehicle, the defendant recited the alphabet and attempted a one-legged stand and the "walk and turn" test. Officer Quigley testified that the defendant passed the alphabet test, but failed the other two tests. The officer formed the opinion that the defendant was operating his vehicle under the influence of alcohol and arrested him.

The defendant testified and called four witnesses. Each witness had been with him at different times during the evening, at two different bars, and testified that in no instance was the defendant intoxicated. The defendant testified that his hearing, balance, and equilibrium are impaired. The defendant's medical records from Carney Hospital, documenting his ear surgeries, and his medical records from the Massachusetts Eye and Ear Infirmary, where his treating physician practices, were admitted in evidence.

2. *Physician's report offered under G. L. c. 233, § 79G.* In addition to the medical records from the hospital and the infirmary, defense counsel proffered a report addressed "To Whom It May Concern," dated September 3, 1998, from the defendant's physician, Dr. Edward Reardon. The report was in

letter form and included the following statements: "[The defendant] has documented inner ear hearing loss and degeneration of the balance system. . . . [He has] a chronic imbalance for which he has learned many compensatory techniques." No particular statements in the medical records that were admitted, as opposed to the proffered report, indicated that the defendant had a balance problem; rather they recited various conditions of the ear and noted that there was some hearing loss. Dr. Reardon's report was signed under the pains and penalties of perjury; defense counsel sent the report to the prosecutor by certified mail ten months before trial began; and defense counsel provided the clerk's office with an affidavit that enumerated the steps defense counsel had taken to comply with the requirements of G. L. c. 233, § 79G, including notification to the prosecutor of the report. At trial, defense counsel argued that, having taken these steps, the report was admissible under G. L. c. 233, § 79G. Upon the Commonwealth's objection, the judge excluded it.

3. *Applicability of G. L. c. 233, § 79G, to criminal cases.* One reason stated by the judge for excluding the report was that G. L. c. 233, § 79G, does not apply to criminal cases. This interpretation was incorrect. The language of § 79G does not limit its applicability to civil cases.[1] The difference between § 79G before and after the amendment in 1988, St. 1988, c. 130, supports this conclusion. In that year, the statute was significantly broadened. Prior to the 1988 amendment, § 79G applied only to actions sounding in tort or contract rather than to "any proceeding commenced in any court" and to proof of medical and hospital bills, but not to reports. *Ortiz* v. *Stein*, 31 Mass. App. Ct. 643, 645 (1991). With the 1988 abolition of these limitations, the Legislature facilitated the introduction of medical bills and reports in all cases where the statutory safeguards have been followed. See note 2, *infra.*

[1]See *Commonwealth* v. *McCready*, 50 Mass. App. Ct. 521, 524 (2000), as to admissibility of hospital records in criminal cases under G. L. c. 233, § 79. Because it was the defendant who sought to have the report introduced here, no issue of a right to confrontation has been presented in this case. Compare *Commonwealth* v. *Pike*, 430 Mass. 317, 326 & n.8 (1999) (defendant's right of confrontation not abridged by introduction of hospital records under G. L. c. 233, § 79).

4. *Admissibility of a "report" not made in the regular course of treatment or examination.* The Commonwealth argues that the letter from Dr. Reardon was not a "medical record" within the meaning of G. L. c. 233, § 79, and thus not admissible under § 79G. The scope of § 79G is, however, much broader than § 79. *Ortiz* v. *Stein,* 31 Mass. App. Ct. at 645. The mere fact that a document is a medical record inadmissible under § 79 does not mean it is inadmissible under § 79G. After the 1988 amendment, § 79G allows, among other things, a written "report" of an examining physician as to the disability or incapacity proximately resulting from a condition that he or she observed to be placed in evidence as an exception to the hearsay rule. *Knight* v. *Maersk Container Serv. Co.,* 49 Mass. App. Ct. 254, 256 (2000).[2]

Although the term "report" is not defined in the statute, § 79G sets forth limitations on the admissibility of "reports," which were met by the defendant in this case. Specifically, the report must be by a physician who examined or treated the patient. *Ortiz* v. *Stein,* 31 Mass. App. Ct. at 645-646. Furthermore, the report must be attested to by the physician. *Ibid.* However, there is no disqualification of such a report merely because it was prepared in anticipation of litigation.[3]

We note that reports admissible under § 79G may include the "opinion of such physician . . . as to proximate cause of the condition so diagnosed, . . ." and "the opinion of such physician . . . as to disability or incapacity, if any, proximately

---

[2]"However, in order for such a medical report to be admissible in evidence at trial, § 79G mandates that certain requirements be met, namely that (1) written notice of the intention to offer the report in evidence, along with a copy of the report, must be served on the opposing party or his attorney by certified mail, return receipt requested, not less than ten days before the introduction of the report; (2) an affidavit of such notice and the return receipt must be filed with the clerk forthwith after the return receipt is received; and (3) the report must be subscribed and sworn to under the penalties of perjury by the physician." *Knight* v. *Maersk Container Serv. Co.,* 49 Mass. App. Ct. at 255. The statute further provides that, once these requirements are met, any party may, at his or her own expense, summons the physician for the purpose of cross-examination with respect to his or her report. G. L. c. 233, § 79G.

[3]In *Knight,* the fact that the report was from an examining physician retained by the defendant's insurer did not attract any comment from the court that it was prepared in anticipation of litigation because the issue was not presented for decision.

resulting from the condition so diagnosed . . . ." These are not matters usually found in a medical record but do pertain to issues commonly involved in personal injury claims and litigation. Thus, the concerns that require redaction of information not germane to the patient's treatment in medical records under § 79, see, e.g., *Bouchie* v. *Murray,* 376 Mass. 524, 531 (1978), are overridden by express language in § 79G.

Dr. Reardon was the defendant's treating physician. He was reporting from personal observations of the defendant. He was describing a medical condition and its effects on his patient. Specifically, he noted that the "[defendant] does, however, have a chronic imbalance for which he has learned many compensatory techniques." Dr. Reardon also stated, "Patients with this kind of problem do have more difficulty, particularly in the dark, in maintaining their balance." This was clearly, in the words of the statute, an "opinion of such physician . . . as to disability or incapacity, if any, proximately resulting from the condition so diagnosed . . . ." It was error to exclude it.

This evidence strongly bolstered the defense theory that the defendant failed the field sobriety tests because of a balance problem caused by a medical condition. The lack of such evidence in the record was a key component of the prosecutor's argument.[4] The exclusion of this evidence was prejudicial and requires reversal of the conviction.

5. *Field sobriety tests.* Although Dr. Reardon's report should have been admitted, its admission in evidence would not, as argued by the defendant, justify the exclusion of Officer Quigley's testimony about his administration of field sobriety tests to the defendant. Field sobriety tests "measure a person's sense of balance, coordination, and acuity of mind in understanding and following simple instructions. A lay juror understands that intoxication leads to diminished balance, coordination, and mental acuity from common experience and knowledge." *Com-*

---

[4]The prosecutor argued, "In fact, the only evidence we have that the defendant either had . . . that the defendant had an equilibrium problem is the defendant's own statements. You can look through those medical records and you're not gonna find anything that says the defendant has an equilibrium problem. And you're certainly welcome to look." As to the propriety of this argument, see *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1, 9 (1980), and *Commonwealth* v. *Zuluaga,* 43 Mass. App. Ct. 629, 647 (1997).

monwealth v. *Sands*, 424 Mass. 184, 188 (1997). See *Commonwealth* v. *McGrail*, 419 Mass. 774, 777 n.7 (1995) (field sobriety tests are dexterity tests). Officer Quigley's conclusion that defendant did not "pass" the test could be and was impeached by his agreement that a medical condition could cause difficulty in balancing and render the test an unreliable indicator of intoxication. The admission of Dr. Reardon's report would have served to undermine the opinion given by Officer Quigley (without objection) that the defendant was impaired and under the influence of alcohol, but would not have precluded his testimony. The defendant's objections to Officer Quigley's testimony about the field sobriety tests were properly overruled.

Also, there was no error in excluding a State police manual relating to standards for administering field sobriety tests which was offered without limitation. To the extent the defendant sought to introduce the manual as evidence of the proper procedures to be used in conducting field sobriety tests and of the limitations and reliability of such tests, it was inadmissible hearsay. See *Framingham* v. *Department of Pub. Utils.*, 355 Mass. 138, 145 (1969). To the extent defendant wished to use it to impeach Officer Quigley's credibility by showing deviations between the understanding and practices of the officer and the recommended procedures in the manual, he was able to do so without having the manual itself in evidence. Officer Quigley's adherence to or deviation from the teachings of the manual was brought out fully in cross-examination, which made specific reference to various statements in the manual. Any failure to adhere to training standards, however, "b[ore] on the weight of his testimony," *Commonwealth* v. *Vaidulas*, 433 Mass. 247, 254 (2001), and did not clear the way for the admissibility of a standard training manual.

6. *Tuey-Rodriquez charge.* The defendant claims for the first time on appeal that the judge, after having sent the jury out at 4:50 P.M., coerced a verdict by calling the jury in sua sponte at 6:50 P.M. and giving them the *Tuey-Rodriquez* charge. See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973). It appears that defense counsel did not object to the instruction. The risk of

coercing a verdict "is most prevalent where a judge [as here] recalls the jury on his or her own initiative in order to prompt the jury to reach a decision." *Commonwealth* v. *Scanlon*, 412 Mass. 664, 679 (1992). The practice is disfavored. *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 100 (1973). We conclude, however, that the single issue before the jury was not complicated. *Commonwealth* v. *Haley*, 413 Mass. 770, 779 (1992). The judge has discretion in deciding when to give the charge. *Ibid.* In addition, after the charge was given, the jury came back with a question and, only after having been reinstructed on the element of impairment, did the jury return a verdict. In these circumstances, the charge did not have a coercive effect. See *Commonwealth* v. *Bregnard*, 3 Mass. App. Ct. 489, 492 & n.4 (1975) (no error where judge, sua sponte, gave *Tuey-Rodriquez* charge); *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1006 (1982).

7. *Other issues.* Other issues raised in the defendant's brief do not merit discussion as they will not arise at any new trial.

*Judgment reversed.*

*Verdict set aside.*