Agnes, Peter W., J.
INTRODUCTION
This is a medical malpractice case involving allegations of negligence on the part of the defendants in failing to diagnose the breast cancer of the plaintiff, Therese Rivard. On June 2, 2005, plaintiffs counsel advised defendants that plaintiff intended to introduce the report of Dr. Kathryn Edminston dated March 21, 2005, under G.L.c. 233, §79G. Defendants have moved to exclude the report on grounds that it is not within the scope of G.L.c. 233, §79G.

*157
DISCUSSION

I
The facts pertinent to the resolution of the defendant’s motion are not in dispute. The report in question consists of two main paragraphs. The first paragraph is not in dispute and consists mostly of specific diagnoses regarding the plaintiffs condition beginning with her initial consultation and continuing throughout her various treatments. The second paragraph and the paragraph with which the defendant takes issue, states in pertinent part:
Ms. Rivard was diagnosed with T2NO left side breast cancer which without further systemic therapy has a 30% death rate at 10 years. Adjuvant therapies are effective at proportionally reducing this by approximately 40% to an absolute risk of 18% at 10 years. Her risk of recurrence decreases as more time elapses from the time of diagnosis and treatment but never becomes zero. Patients with invasive breast cancer can rarely develop recurrence 25 years after diagnosis.
Defendants’ objection to the admissibility of the report is based on two arguments: first that the statements made in the second paragraph are not within the scope of the reports that are made admissible under G.L.c. 233, §79G; and second, that Dr. Kathiyn Edminston is not qualified to express an opinion of this nature in this fashion.
G.L.c. 233, §79G provides in part that:
In any proceeding commenced in any court... an itemized bill and reports, including hospital medical records, relating to medical, dental, hospital services, prescriptions, or orthopedic appliances rendered to or prescribed for a person injured, or any report of any examination of said injured person, including, but not limited to hospital medical records subscribed and sworn to under the penalties of peijury by the physician . . . shall be admissible as evidence of the fair and reasonable charge for such services or the necessity of such services or treatments, the diagnosis of said physician or dentist, the prognosis of such physician or dentist, the opinion of such physician or dentist as to proximate cause of the condition so diagnosed, the opinion of such physician or dentist as to disability or incapacity, if any, proximately resulting from the condition so diagnosed ...[1]
G.L.c. 233, §79G represents a separate and distinct exception to the hearsay rule from that contained in G.L.c. 233, §79 which provides that hospital records may be admitted to prove the truth of the facts contained within them insofar as those facts relate to the treatment and diagnosis of a patient. See Bouchie v. Murray, 376 Mass. 524, 527 (1978). In Commonwealth v. Schutte, 52 Mass.App.Ct. 796, 799 (2001), the defendant, who was charged with operating a vehicle under the influence of alcohol, sought to introduce a letter he obtained from his treating physician and that his physician had prepared in preparation for his trial, stating his physician’s opinion why he (the defendant) was unable to perform field sobriety tests. In holding that the opinion letter was admissible, the court explained that the scope of G.L.c. 233, §79G is broader than that of G.L.c. 233, §79.
The mere fact that a document is a medical record inadmissible under §79 does not mean it is inadmissible under §79G. After the 1988 amendment, §79G allows, among other things, a written “report” of an examining physician as to the disability or incapacity proximately resulting from a condition that he or she observed to be placed in evidence as an exception to the hearsay rule. Although the term “report” is not defined in the statute, §79G sets forth limitations on the admissibility of “reports," which were met by the defendant in this case. Specifically, the report must be by a physician who examined or treated the patient. Furthermore, the report must be attested to by the physician. However, there is no disqualification of such a report merely because it was prepared in anticipation of litigation.
We note that reports admissible under §79G may include the “opinion of such physician ... as to proximate cause of the condition so diagnosed,...” and “the opinion of such physician ... as to disability or incapacity, if any, proximately resulting from the condition so diagnosed . . .” These are not matters usually found in a medical record but do pertain to issues commonly involved in personal injury claims and litigation. Thus, the concerns which require redaction of information not germane to the patient’s treatment in medical records under §79, are overridden by express language in §79G.
Id. at 799-800 (citations omitted).
II
With regard to the first claim by the defendants in this case involving the scope of §79G, the issue is whether or not discussions of life expectancy and recurrence of illness properly fall within the language of the statute. G.L.c. 233, §79G allows the medical reports of the treating physician to be “admissible as evidence of. . . the prognosis of such physician ...” Id.
The best evidence of the meaning of the words used by the Legislature in a statute is the words themselves, viewed in their statutory context and in the light of the object of the legislation. The classic statement of this approach was made by Chief Justice Arthur Prentice Rugg.
The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature[2] ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be rem *158 edied and the main object to be accomplished, to the end that the purpose of the framers may be effectuated.
Hanlon v. Hanlon, 286 Mass. 444, 447 (1932) (Rugg, C.J.), citing Commonwealth v. S.S. Kresge Co., 267 Mass. 145, 148 (1929) (Rugg, C.J.). See also Bartlett v. Greyhound Real Estate, 41 Mass.App.Ct., 282, 286 (1996). In short, “(t]he statutoiy language itself is the principal source of insight into the legislative purpose," Hoffman v. Howmedia, Inc., 373 Mass. 32, 37 (1977).
At the outset, it is useful to note that §79G was amended by the Legislature in 1988. St. 1998, c. 130. The Amendment made a substantial change in what previously had been “a straightforward statutory exception to the hearsay rule” that was designed to facilitate proof of charges for medical and hospital services. See Ortiz v. Stein, 31 Mass.App.Ct. 643, 645 (1991) (indicating that the statutory exception renders admissible the contents of medical reports that are made by examining physicians including their opinions about diagnosis and prognosis).[3]
The Legislature did not specifically define the words “prognosis" or “diagnosis” as they appear in G.L.c. 233, §79G. However, these words are plainly technical in nature and should be given the meaning associated with them by medical and health professionals in the absence of any contrary direction by the Legislature. Merriam-Webster’s Medical Dictionary defines “prognosis” as “the act or art of foretelling the course of a disease,” including “the prospect of survival and recovery from a disease, as anticipated from the usual course of that disease.” Merriam-Webster’s Medical Dictionary (2002). Black’s Law Dictionary has a similar definition: “the process of forecasting the probable outcome of a present medical condition (such as a disease) or the forecast of such an outcome.” 7th Black’s Law Dictionary 1227 (1999). See also Melvin v. Stevens, 458 P.2d 977, 981 (Ariz.Ct.App. 1969) (“prognosis” is a matter of opinion respecting the “probable path of recovery or complication”). Therefore, a physician’s statements regarding survival rate and the potential path of the diagnosed disease fall within the meaning of the word “prognosis.” Thus, the statements made by Dr. Kathryn Edminston in her report are within the scope of G.L.c. 233, §79G.
Ill
With regard to the defendant’s second claim involving whether or not Dr. Kathryn Edminston is allowed to express her opinion about the risks associated with breast cancer in terms of statistical rates of recurrence over her lifetime, it should be noted that discussions of life expectancy, survival rate and treatment options are not usually considered to be outside the realm of a doctor’s expertise. Salas v. United States, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) (issues of diagnosis, prognosis and causation are matters considered within the normal scope of the patient’s care and treatment); LaMere v. NY State Office for the Aging, 223 F.R.D. 85, 90 (treating physician can express “an opinion as to the cause of any medical condition present in a patient, the diagnosis, the prognosis and the extent of the disability”) (citing Zanowic v. Ashcroft, 2002 U.S. Dist. LEXIS 3857, 2002 WL 373229, at *3); Cella v. United States, 825 F.Sup. 1383, 1395-96 (N.D.Ind. 1991); Owens-Corning Fiberglas v. Watson, 243 Va. 128, 139-40 (1992). See also Commonwealth v. Rice, 441 Mass. 291 (holding that generally qualified experts do not require a sub-specialty in order to testify to things within their expertise).
The basis for the specific opinion offered by Dr. Edminston is not contained in her report. The defendants, therefore, are not foreclosed from filing a motion in limine, once additional discovery is obtained, to challenge whether Dr. Edminston is qualified to render such an opinion.[4]

ORDER

For the above reasons, the defendant’s motion in limine to preclude the report of Dr. Kathryn Edminston is DENIED.

 The statute goes on to prescribe rules for qualifying such reports for admission into evidence which are not at issue in this case. The statute also specifically prescribes that “[nlothing contained in this section shall be construed to limit the right of any party to the action to summon, at his own expense, such physician ... for the purpose of cross examination with respect to such bill, record and report or to rebut the contents thereof, or for any other purpose, nor to limit the right of any party to the action or proceeding to summon any other person to testify in respect to such bill, record or report or for any other purpose.”

 The duty to ascertain the intent of the legislature is so central to the judicial function that principles of statutory construction require the court to disregard the plain and unambiguous meaning of words used in a statute when a literal interpretation of the words would defeat the intention of the legislature, see Holbrook v. Holbrook, 18 Mass. (1 Pick.) 246, 250 (1822), render other provisions of the statute meaningless, Fleming v. Contributory Retirement Appeal Board, 431 Mass. 374 (2000), or produce absurd results. See also Lehan v. North Main Street Garage, 312 Mass. 547, 550(1942) (Rugg, C.J.) (“If a liberal, even if not literally exact interpretation, of certain words is necessary to accomplish the purpose indicated by the words as a whole, such interpretation is to seem expedient to the court is not a substitute for what was intended by the Legislature.” See See v. Building Com’r of Springfield, 246 Mass. 340, 343 (1923). This caution against judicial over-reaching under the guise of statutory interpretation is not simply prudential, but rather is an essential ingredient of the doctrine of the separation of powers. See Vandresser v. Firlings, 305 Mass. 51, 53 (1940) (Qua, C.J.).

 Reports of treating physicians, of course, may contain opinions as well as facts about the patient’s condition, its cause and the future course of events that the patient reasonably may experience. Thus, the distinction drawn by the defendant between a “treating physician” and an “expert witness,” see Defendant’s Memo at 3, quoting Mass.R.Civ.P. 30(A)(m)(l), is not a limitation of the scope of G.L.c. 233, §79G. However, the service by the plaintiff of a §79G notice containing expert opinion testimony by a treating physician constitutes a decision by the plaintiff that the treating physician is also a trial expert within the meaning of Mass.R.Civ.P. *159 26(b)(4). Therefore the defendants may exercise the right to pose expert interrogatories under Mass.R.Civ.P. 26(b)(4)(A)(i).

 It is important to note that simply because a physician’s report is admissible under §79G, doesn’t mean that the doctor can’t be called as a witness and cross examined about its contents. G.L.c. 233, §79G. Ultimately, it is for the fact finder to determine what weight, if any, to assign to a report admitted under §79G.