Greco, P.J.
Rachel Carroca (“Carroca”) brought this action against Barbara Welsh (‘Welsh”) to recover damages arising out of a motor vehicle accident in Topsfield, Massachusetts on July 5, 2005.
The case was tried before a jury, which returned a verdict for defendant Welsh. Carroca has appealed, arguing that the trial judge erred in striking from the evidence certain medical records and bills, in his instructions to the jury concerning “the rules of the road,” and in his demeanor during the trial, which she argues demonstrated a bias against her and her lawyer.
As to the accident itself, Carroca testified that she was driving north on Route 1 in Topsfield at the rate of thirty to thirty-five miles an hour. As she neared the intersection of Route 1 and Salem Road, Carroca saw Welsh to her right on Salem Road. Welsh was approaching the stop sign before entering Route 1. There were also “stop lines” on Salem Road. There was no sign indicating that the northbound traffic on Route 1, in which Carroca was driving, had to stop at this intersection. Welsh entered onto Route 1 without stopping at the sign, or the “stop lines.” Carroca swerved to the right to avoid being hit. However, Welsh collided with her car. Carroca further testified that as a result of the accident, she suffered burns on her arms, breast, face, and neck, along with whiplash to her neck. She was taken to Beverly Hospital for treatment. She subsequently was seen by her primary care physician (Dr. Cow), by four other doctors (Drs. Pennell, Miller, Walsh, and Garris), underwent an MRI, and received physical therapy.
Welsh testified that because of construction on Route 1, traffic had to be rerouted with the result that there was a long line of vehicles on Salem Road waiting to get on Route 1. She approached Route 1 with the intent to cross the northbound lane and then take a left onto the southbound lane. When she got to the stop sign, Welsh stopped and looked to her left. She saw Carroca’s car six car lengths away,[2] coming down the hill or “slight incline.” A motorist ahead of her waved. Welsh “speeded up so that I would avoid being struck, avoid hitting Carroca and — but there was the impact and my car swung around facing the opposite way.” Carroca struck the left rear of her car. When asked to estimate the speed of Carroca’s car, Welsh was unable to do so, stating, “I was concentrating on looking there across the street to make sure that I had the right of way to turn left from the oncoming traffic on the other side of the hill.”
Various medical records were the source of extended discussion at trial. When Carroca’s attorney sought to introduce records of her therapy, Welsh objected on the ground that the records related to physical therapy in 2007, and not to the 2005 accident. The court overruled the objection, stating that a note of Dr. Walsh in 2008 *292 “ties” the records to the 2005 accident, and that “it’s a question of fact for the jury.” On cross-examination, Welsh’s counsel questioned Carroca about the therapy she had received over the years. The court ruled that some of the records did not relate to the 2005 accident and struck them from the record. Carroca’s counsel did not object at this point. At the close of Carroca’s testimony, Welsh moved to strike a report of Dr. Walsh on the grounds that it was “generated as a result of a plaintiff going to a doctor for purposes of litigation,” that Carroca was not referred to Dr. Walsh by another physician, that Dr. Walsh was not a treating physician, and that it was “not a medical record admissible under” G.L. c. 233, § 79G.
As to the rules of the road, the trial judge instructed the jury as follows:
Massachusetts law requires that when two vehicles approach or enter an intersection at approximately the same instant, the operator of the vehicle on the left should yield the right of way to the vehicle on the right... [, and that] every driver of a vehicle approaching a stop sign shall stop at a clearly marked line, but if none, before entering a crosswalk or near the side of an intersection. After having stopped, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time that such driver is moving across or within the intersection.... An operator of a motor vehicle is required by law to slow down before entering an intersection and failure to do so is also evidence of negligence.
After this initial instruction, there was a sidebar conference between the judge and attorneys. Based on the transcription, it is difficult to follow exactly what additional instructions were being sought. In any event, after the conference, the trial judge gave the following additional instruction on the rules of the road:
One who through no negligence of her own is faced with a sudden peril or emergency which demands speedy decision and action is entitled to have the sudden peril or emergency considered along with all other circumstances bearing on the question of their due care.
1. Medical Records. Whether the records related to the accident on July 5,2005 or some other accident was a question of fact for the jury. The trial judge’s initial instinct as to the admissibility of some of the records under G.L.c. 233, §79G would appear to have been correct, although he later excluded the records. A business record would “not be inadmissible... if the court finds that... it was made before the beginning of the civil or criminal proceeding in which it is offered.” Mass. G. Evid. §803(6) (A), at 246 (2011). A similar finding, however, is not required as to hospital records or medical reports. See §803(6). See also Commonwealth v. Schutte, 52 Mass. App. Ct. 796, 799 (2001), where the Court noted that “there is no disqualification of... a [medical] report merely because it was prepared in anticipation of litigation.” However, any concerns about what the records related to or whether the statutory provisions were complied with simply are not relevant in this case. Under §79G, such records would have been admissible as evidence “of the fair and reasonable charge for such services or the necessity of such services or treatments” as well as *293 of the doctor1 s diagnosis, prognosis, and opinions “as to proximate cause of the condition so diagnosed” and “as to disability or incapacity, if any, proximately resulting from the condition so diagnosed.” Here, the trial judge submitted the case to the jury on questions, the first of which being, “was the defendant, Barbara Welsh, negligent” in her operation of a motor vehicle on July 5, 2005. The jury answered “no.” There was then no need for the jury to address the issue of damages. Carroca has not argued that these records were in any way relevant to liability. Accordingly, any error related to the admission of the medical reports was harmless.
2. Rules of the Road Instructions. The jury instructions concerning the rules of the road as set out above were adequate given the evidence presented. It was clear that Welsh was facing a stop sign as she approached Route 1. The jury was told that after she stopped, Welsh was required to “yield the right of way to any vehicle ... approaching on another way so closely as to constitute an immediate hazard during such time that such driver is moving across or within the intersection.” Carroca also argues that the instruction on “sudden emergency” was deficient because it was not explained to the jury that “the [djefendant cannot be the creator of the situation which gives rise to the sudden emergency.” However, the instruction was potentially applicable to the behavior of both parties to the accident. Carroca testified that she swerved to the right to avoid being hit; Welsh testified that she sped up to avoid the accident. In any event, an “emergency condition is a factor in determining the reasonable character of [a motorist’s] choice of action.... [A] judge may instruct the jury that the emergency conditions are a factor in determining the reasonableness of the defendant’s actions, not that the judge must give such an instruction” (citations omitted). Hallett v. Town of Wrentham, 398 Mass. 550, 559 (1986). In this case, stating that “[o]ne who through no negligence of her own” is faced with an emergency is almost synonymous with “one cannot be the creator” of the emergency. There was no error.
3. Judge’s Remarks. Unquestionably, there was some friction between the trial judge and Carroca’s attorney, although at times there was also some cordiality. Much of the friction related to the judge’s concern that the case not extend over to the next week. For example, the judge limited opening statements to ten minutes, a ruling that applied to both sides. The judge also advised Carroca’s counsel not to “retry the case” by way of his redirect and recross of witnesses. However, for the most part, these remarks were not made in the presence of the jury. If one were to count rulings, it may well be that the judge more often ruled in favor of Welsh on objections to the evidence. But the rulings against Carroca generally resulted from her tendency to stray and ramble beyond the question asked, and her lawyer’s revisiting ground previously covered. The judge was also quick to exclude testimony about the contents of records already admitted into evidence, although he did allow counsel toward the end of the case to read at length the contents of many of the records to the jury. As noted above, Carroca suffered no prejudice from the court’s striking evidence of medical reports that her lawyer had previously been able to introduce. Moreover, while not particularly serious, there were instances where a rebuke by the trial judge was warranted. In any event, the “judge’s comment [s] did not reflect on the merits of the [plaintiff’s] case, and, taken on [their] own, the comments] hardly served to hold... counsel up to such scorn and ridicule that his effectiveness as an advocate was impeded.” Shahzade v. C.J. Mabardy, Inc., 411 Mass. 788, *294 792 (1992). See also Cheschi v. Boston Edison Co., 39 Mass. App. Ct. 133, 139 (1995).
Finally, the trial judge instructed the jury to “draw no inference favorable or unfavorable, to either attorney or their client to objecting to proposed evidence.” More importantly, he stated the following:
You should not consider anything I have said or done during the trial in ruling on motions or objections or in comments to the attorneys or in questions to the witnesses or in setting forth the law in these instructions. Indeed, do not even consider the tone of my voice as any indication of my opinion as to how you should decide the case. If you believe that I have expressed or even hinted at any view about the facts of this case, please disregard it....
Now during the course of this trial, I had an occasion to admonish or reprimand an attorney. You are to draw no inference against him or his client because of that. It is the duty of the attorneys to offer evidence, to object and to argue to you on behalf of their side. It is my function to exclude evidence and — or argument that is inadmissible under our rules and to admonish attorneys when I feel it is necessary for an orderly trial. You are to draw no inference from that. It is irrelevant whether you like a lawyer or whether you believe I do or do not like a lawyer. The issue is not which attorney is more likeable. The issue is whether the plaintiff has proved her case.
Your verdict must be based solely on the facts as you find them from the evidence and on the law as I explain it to you. Nothing else that may have happened in this courtroom is relevant in your — to your deliberation and the verdict. In short, you are to confine your deliberations to the evidence and nothing but the evidence.
In these circumstances, there was no error.
Accordingly, the judgment of the trial court is affirmed.
So ordered.

 In her deposition, she had stated that she did not know how many car lengths away was Carroca’s car.