COMMONWEALTH *vs.* JOHN R. MCCREADY.

No. 99-P-868.

Worcester. September 18, 2000. - November 29, 2000.

Present: JACOBS, KAPLAN, & SMITH, JJ.

*Evidence,* Hospital record, Intoxication. *Motor Vehicle,* Operating under the influence, Operating to endanger.

At the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, the judge correctly admitted in evidence a hospital record, as defined in G. L. c. 233, § 79, containing a nurse's note "Strong ETOH [alcohol] on breath" [523-524], and no other reason appeared on the record to warrant the exclusion of the record [524-525].

Where a criminal defendant was not afforded a separate trial on the issue of a second offense of violation of G. L. c. 90, § 24(1)(*a*)(1), this court vacated the second offense portion of the conviction and remanded the matter for further proceedings. [525]

COMPLAINT received and sworn to in the Westborough Division of the District Court Department on May 15, 1998.

The case was tried before *Thomas F. Sullivan, Jr.,* J.

*Richard J. Fallon* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. Upon jury trial in District Court, the defendant John McCready was convicted of operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24(1)(*a*)(1) ("OUI"), and of operating a vehicle recklessly so as to endanger, G. L. c. 90, § 24(2)(*a*).[1] On the present appeal, the defendant does not dispute there was sufficient evidence to convict, but he argues the judge erred in admitting a portion of the record at the hospital indicating he was intoxicated when

---

[1]The defendant was also charged, civilly, with failing to stop at a red light or stop sign, G. L. c. 89, § 9 (filed with consent), and speeding, G. L. c. 90, § 17 (found not responsible).

involved in the motor accident, and, had this record evidence been disallowed, the jury might have brought in a verdict of acquittal. We hold that the judge did not err (and, although the point becomes immaterial, we doubt the jury would have found for the defendant if they had been kept unaware of the hospital record, for all the other evidence tending to prove the defendant's condition was pretty solid).

For the first time on appeal the defendant also notes a question about his being sentenced on the OUI offense as a second offender.

The case in outline (to be viewed with intendments favoring the Commonwealth) was as follows. The defendant in his 1992 Oldsmobile Toronado was driving north on Lyman Street in Northborough on the way to his house in Marlborough. Before the intersection of Lyman and Bartlett Streets, in an illuminated, thirty-five miles per hour speed area well known to the defendant, his vehicle went out of control and ran off the road, struck a guardrail, descended into a ditch or embankment, and collided with a concrete portion of a water main aqueduct; it halted 142 feet past the intersection. The front part of the car was crushed. The time was 9:30 P.M. The defendant managed to lift himself from the wreck and to walk to the house nearby of Jean Stone, an acquaintance.

Arriving at the scene on radio call, Officer Joseph Galvin of the Northborough police observed the extensive damage to the car and searched for but found no skid marks on the road or other evidence of braking. At Stone's house, Galvin spoke with the defendant and at close approach to him noted a strong smell of alcohol on his breath, eyes glassy and bloodshot, and speech slurred. Galvin did not run any physical field sobriety test because the defendant had suffered injuries; on verbal testing (recitations of alphabet), the defendant did rather poorly. The defendant said he had had two alcoholic drinks, one at 3:30 P.M. (not otherwise described) and the other at 7:30 P.M. (whiskey mixed with water and ice in a ten-ounce glass); it appeared he had not had a substantial meal in the course of the day. Galvin's total assessment was that the defendant "wasn't flat down drunk but he was under the influence."

For the defendant, Stone and the defendant's wife (who appeared at Stone's house after a phone call) testified that the defendant seemed to them sober in looks and action. The defendant protested he was sober and not at fault; he said his

brakes had simply failed when applied. There was some evidence that the car had stalled several times in the few months before the accident, but no proof of prior actual failure of brakes.

Turning to the issue of the hospital record, the defendant reached the Marlborough Hospital by ambulance about 10:55 P.M. and we have by exhibit the usual detailed hospital record, from intake to discharge, showing that the defendant suffered a fracture of his right arm and a broken ankle and was operated upon for the arm injury the following morning about 11:00 A.M.

Before trial, the defendant's counsel saw the hospital record which, however, was then missing a page of "Nurses Notes." Upon the defendant's subpoena, the whole record was delivered by mail to the courthouse — delivered, as it happened, during the course of the trial just after the prosecutor had closed the Commonwealth's case.[2] Counsel on both sides examined the record on the spot and now observed the previously missing page (appearing as page 9 of the appendix before this court). There are intake notes. In a single handwriting there are, among other entries, "Denies neck, back pain," and another, against 10:55 P.M., "Contusion R [for 'Response'] mid tibia. Strong ETOH [meaning alcohol] on breath - AHunter." The judge admitted the breath notation in evidence over defendant's objection. This is the claimed error. The rest of the hospital record went in with some agreed omissions.

1. After much fumbling at trial and some on argument of this appeal, it is now clear that the basis for the admission of the entry should be taken to be G. L. c. 233, § 79, not § 79G. The critical words of § 79 (as appearing in St. 1959, c. 200) are that records by hospitals

> "may be admitted by the court, in its discretion, as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

*a.* Any objection to the admission of the ETOH entry, pre-

---

[2]The defendant's trial subpoena upon Marborough Hospital requested all records of the defendant's treatment "including but not limited to E.T.O.H. records if any."

sumably made by a nurse, is met by *Commonwealth* v. *Dube*, 413 Mass. 570, 573-574 (1992). Justice Wilkins notes that "liability" has been assumed to comprehend "guilt of a crime" and, under a "liberal interpretation," § 79 has been read to permit the admission of a record that "relates directly and primarily to the treatment and medical history of the patient" even though the facts recorded "may have some bearing on the question of liability," indeed, even though the statements "bearing on criminal culpability . . . seem to relate at most only incidentally to medical treatment." *Id.* at 573.[3]

Accordingly, hospital records of blood tests with a bearing on the patient's degree of intoxication have been admitted routinely in OUI prosecutions, see the cited decisions of our court, *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 700-701 (1986); *Commonwealth* v. *Sargent*, 24 Mass. App. Ct. 657, 660-661 (1987); *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923, 925-926 (1991). Justice Wilkins in *Commonwealth* v. *Dube*, 413 Mass. at 574, cites our remarks in *Commonwealth* v. *Atencio*, 12 Mass. App. Ct. 747, 751-752 (1981), indicating that the same holds for more personal, less scientific, judgments about alcoholic odor noted of record; to which may be added the long-standing authority to the same effect of *Leonard* v. *Boston Elevated Ry.*, 234 Mass. 480, 483 (1920); *Clark* v. *Beacon Oil Co.*, 271 Mass. 27, 28-29 (1930); *Cowan* v. *McDonnell*, 330 Mass. 148, 148-149 (1953); *Commonwealth* v. *Gogan*, 389 Mass. 255, 263-264 (1983). It should make no difference that a nurse, not a physician, made the observation and entry. See G. L. c. 111, § 70 (hospitals to maintain nurses' notes). Of course, a person unconnected with a hospital — take Officer Galvin — may testify to his or her like observation without more. Section 79 merely serves the purpose of overcoming a hearsay difficulty in letting in the nurse's statement without having the nurse actually attend court — the hospital setting with routinized record keeping makes a case for the solecism.

*b.* Other points. Unlike § 79G,[4] § 79 has no provision for advance notice — ten days in § 79G — of an intent to offer the

---

[3]Regarding the relation of the drinking to medical treatment, the defendant's wife, a registered nurse, remarked in her testimony that a patient who had recently consumed alcohol would not be a candidate to undergo anesthesia.

[4]Section 79G (as appearing in St. 1988, c. 130) among other things allows proof of the "fair and reasonable charge" for medical services without compliance with hearsay restrictions.

record in evidence. Still the defendant complains of unfairness in that he had no opportunity to inquire whether "AHunter" was in fact a nurse who would have a direct impression of the defendant when he was admitted. Counsel did not make this point when the record was offered. Anyway, the trial went over to a second day and one would have expected the defendant, if troubled, to ask for a short continuance to make (with the Commonwealth's cooperation) an initial inquiry at the hospital that might promptly identify "AHunter." However, the presumption that the signatory having access to the hospital record was not an outsider remains strong.

Defendant's counsel said at the time that this was a "certified" record, and it is no more than a quibble to say now that authentication was faulty.

Again, § 79 states the record is to pass to the clerk of court; here it went direct to counsel. This departure from text was trivial.

2. We are informed by counsel, and the transcript confirms, that the trial judge, sentencing the defendant as a second offender, just accepted counsel's statement that there had been a previous OUI conviction. The docket entries also erroneously indicate that the defendant was found guilty by a jury of having committed a second offense of driving under the influence of intoxicating liquor. The proper procedures incident to the defendant's entitlement to a separate trial on the issue in OUI cases can be found in G. L. c. 278, § 11A. See *Commonwealth* v. *Koney*, 421 Mass. 295, 301-302 (1995); *Commonwealth* v. *Zuzick*, 45 Mass. App. Ct. 71, 72, 74-75 (1998); *Commonwealth* v. *Chaplin, ante* 365, 366-367 (2000). The judgment on the second offense portion of the charge therefore must be vacated.

The judgment on the charge of operating a vehicle recklessly so as to endanger is affirmed. The judgment on the charge of having committed a second offense of driving while under the influence of liquor is vacated, and the docket entries are to be corrected to reflect that the jury verdict found the defendant guilty of the offense of operating a motor vehicle while under the influence of alcohol, not of a second offense. The verdict as corrected shall stand. The matter is remanded to the District Court for further proceedings on that portion of the complaint charging the defendant with a second offense of operating a motor vehicle while under the influence of intoxicating liquor.

*So ordered.*