COMMONWEALTH *vs.* JAMAL AITAHMEDLAMARA.[1]

No. 03-P-1580.

Suffolk. January 10, 2005. - March 3, 2005.

Present: GREENBERG, DUFFLY, & GREEN, JJ.

*Indecent Assault and Battery on a Retarded Person. Mentally Retarded Person. Witness,* Competency.

At the trial of an indictment charging the defendant with indecent assault and battery on a mentally retarded person, in violation of G. L. c. 265, § 13F, the evidence was sufficient to establish that the victim was mentally retarded and that the defendant was aware of the victim's retardation [76-78], and the judge did not abuse his discretion in finding the victim competent to testify at trial [78].

INDICTMENT found and returned in the Superior Court Department on June 6, 2000.

The case was tried before *Robert A. Mulligan*, J.

*José A. Espinosa* for the defendant.

*Dean A. Mazzone*, Assistant District Attorney, for the Commonwealth.

GREEN, J. We consider what evidence is required to establish that a sexual assault victim is mentally retarded, to support that element of the offense of indecent assault and battery on a mentally retarded person, under G. L. c. 265, § 13F. We conclude that the evidence in the present case was sufficient to support the defendant's conviction. We also reject the defendant's contention that the trial judge abused his discretion in finding the victim competent to testify at trial.

The term "mentally retarded" is not defined in G. L. c. 265, § 13F. We accordingly look to the term's "usual and accepted meaning[]," so long as it is "consistent with the statutory

---

[1]As is our custom, we spell the defendant's last name as it appears in the indictment.

purpose." *Commonwealth* v. *Bell,* 442 Mass. 118, 124 (2004), quoting from *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977). Webster's Third New Intl. Dictionary 1938 (2002) defines the term "retarded" as "slow or limited in intellectual development, in emotional development, or in academic progress." In a regulation promulgated by the Department of Mental Retardation (DMR), 115 Code Mass. Regs. § 2.01 (1994), mental retardation is said to be

> "manifested by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skills areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work."

A DMR service coordinator testified at trial that the victim was eligible to receive services from DMR, and that only persons with an IQ level below 76 were so eligible. The witness further testified that the victim's IQ was significantly below that threshold, having tested at 33 in 1959 (at age 10) and at 27 in 1962, and that she required assistance with virtually all of her basic life skills, including managing her money, making and keeping medical appointments, and even keeping track of the days of the week. Given the severe impairment of the victim's mental function, it is of no consequence that the evidence did not include testimony by an expert psychiatric witness.[2]

The Commonwealth also presented sufficient evidence that the defendant was aware that the victim was retarded. The defendant assaulted the victim in her room on the first floor of a group home managed by DMR and the Massachusetts Association for the Blind. According to the DMR service coordinator, all of the residents of that group home were mentally retarded. The defendant had been employed at the group home for approximately five years at the time of the assault, and testified that his duties included caring for mentally retarded patients and that he had received training in the care of mentally retarded patients. Finally, the victim testified extensively at trial, and the

---

[2]The defendant made no objection at trial to the testimony of the DMR service coordinator.

jury were able from their observations of her to assess both the question of her mental retardation and the likelihood that the defendant was aware of it.[3] See *Commonwealth* v. *Roderick*, 411 Mass. 817, 819 (1992).

The victim's retardation was, in fact, sufficiently pronounced that the defendant claims error in the determination by the trial judge that she was competent to testify at trial. However, the trial judge holds broad discretion to make that determination. See *Commonwealth* v. *Whitehead*, 379 Mass. 640, 656 (1980). Mentally handicapped or insane persons may be competent to testify. See *Kendall* v. *May*, 10 Allen 59, 64 (1865); *Commonwealth* v. *Zelenski*, 287 Mass. 125, 129 (1934). The question whether to order a psychiatric examination is likewise left to the discretion of the trial judge. See *Commonwealth* v. *Jimenez*, 10 Mass. App. Ct. 441, 444 (1980). The trial judge conducted a thorough voir dire examination of the victim, and we discern no basis to disturb his conclusion that she possessed the requisite mental "capacity to observe, remember, and give expression to that which she has seen, heard, or experienced." *Commonwealth* v. *Whitehead, supra,* quoting from *Commonwealth* v. *Tatisos*, 238 Mass. 322, 325 (1921).

*Judgment affirmed.*

---

[3]The defendant's contention that the evidence was insufficient to support a conclusion that he committed an indecent assault and battery rests on his claim that there was no evidence of the assault other than the victim's testimony. The victim's testimony, of course, provides sufficient direct evidence to support the jury's conclusion. See *Commonwealth* v. *Peters*, 429 Mass. 22, 23-24 (1999); *Commonwealth* v. *DiRusso*, 60 Mass. App. Ct. 235, 240-241 (2003). The defendant's reliance on *Commonwealth* v. *Eldridge*, 28 Mass. App. Ct. 936, 937 (1990), overlooks the fact that the victim's testimony in that case did not directly establish whether the defendant's threat of force occurred prior to or concurrently with the sexual assault. Here the victim's testimony, if credited, directly established that the defendant committed an indecent assault and battery.