NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-711                                    Appeals Court

COMMONWEALTH vs. MARLIN PALACIOS.

No. 15-P-711.

Suffolk.     October 24, 2016. - December 8, 2016.

Present: Green, Wolohojian, & Massing, JJ.


Alcoholic Liquors, Motor vehicle. Intoxication. Evidence,
    Hospital record, Intoxication, Medical record. Ambulance
    Worker. Motor Vehicle, Operating under the influence,
    Operation. Practice, Criminal, Required finding.



Complaint received and sworn to in the Chelsea Division of
the District Court Department on July 26, 2013.

The case was tried before James H. Wexler, J.


William T. Harrington for the defendant.
L. Adrian Bispham, Assistant District Attorney, for the
Commonwealth.


MASSING, J. At the defendant's jury trial for operating a

motor vehicle while under the influence of intoxicating liquor

(OUI), the Commonwealth relied in part on ambulance and hospital

records that referred to her consumption of alcohol. The

defendant claims that the ambulance records were erroneously

admitted as hospital records, that references to her intoxication should have been redacted, and that the Commonwealth failed to prove the element of operation. Discerning no error of law or abuse of discretion in the admission of the ambulance and hospital records, and finding the evidence of operation to be sufficient, we affirm.

Background.  The defendant ran a stop sign and crashed into the passenger side of another driver's car.  When the other driver got out of his car, the defendant approached him, yelling that he was at fault for not stopping.  Nobody else was in the defendant's car.

The responding police officer found the defendant to be glassy-eyed and unsteady on her feet.  She gave the officer her identification and stated, in response to his questioning, that "she had been drinking and had approximately two to three drinks."  Because the defendant claimed to be injured and wished to go to the hospital, she was not then arrested.  Instead, an ambulance operated by Cataldo Ambulance Services (Cataldo) transported her to Whidden Memorial Hospital (Whidden).[1]

Cataldo emergency medical technicians (EMTs) made several observations of the defendant, which they recorded on a form that was admitted as an exhibit in redacted form.  The "clinical

---

[1] It appears that Whidden now is known as Cambridge Health Alliance Everett Hospital.

impressions" section of the form states, "Primary Impression: pain -- arm; Secondary Impressions: intoxication -- alcohol acute." The "narrative" section of the form included details of the defendant's condition, including references to her consumption of alcohol:

> "Pt found with PD and FD at scene of a MVA in which pt was the driver. . . . Pt is A&Ox4 but smelling of alcohol. PD is preparing to arrest pt when she begins complaining of left arm pain. Arm is scratched [but] no swelling or deformities are noted. Pt requests to refuse treatment but because she is inebriated pt is counseled to be transported to hospital for evaluation and agrees."

The Whidden records of the defendant's visit were also admitted in evidence in redacted form. The Whidden records convey that the defendant was "the restrained driver" and that she had neck and arm pain. The hospital records contain notes about the defendant's alcohol consumption including, "alcohol intoxication"; "Acute alcohol intoxication"; "Patient . . . also intoxicated"; and "Pt admits to drinking tonight."

The Commonwealth filed a motion in limine, citing G. L. c. 233, §§ 78, 79, 79G, and 79J, seeking to admit the Cataldo and the Whidden records. The defendant filed a cross motion to exclude the records, arguing that the references therein to intoxication were inadmissible because they were not sufficiently related to her treatment or medical history and touched on the ultimate issue of her guilt. The judge ordered the words "alcohol acute" to be redacted from the ambulance

records, and the words "alcohol intoxication" to be redacted from the hospital records. Both sets of records, so redacted, were admitted in evidence over the defendant's objection to the remaining references to her intoxication.

Discussion. Admissibility of ambulance and hospital records. This appeal requires us to consider the application of two statutes governing the admissibility of medical records: G. L. c. 233, § 79, and G. L. c. 233, § 79G. Section 79, as appearing in St. 1959, c. 200, provides that "[r]ecords kept by hospitals, dispensaries or clinics, and sanatoria under section seventy of chapter one hundred and eleven shall be admissible . . . so far as such records relate to . . . treatment and medical history." So long as they are "certified by the affidavit of the person in custody thereof to be a true and complete record," delivered to the clerk of the court, and made available for examination by the parties, such documents "shall be deemed to be sufficiently identified to be admissible in evidence if admissible in all other respects." Ibid. See Mass. G. Evid. § 803(6)(B) (2016).

Similarly, G. L. c. 233, § 79G, as appearing in St. 1988, c. 130, provides for the admissibility of "an itemized bill and reports, including hospital medical records, relating to medical, dental, hospital services, prescriptions, or orthopedic appliances rendered to or prescribed for a person injured, or

any report of any examination of said injured person."  Such records are admissible as evidence of the cost of medical treatment, of the necessity of treatment, or of the diagnosis, prognosis, or opinion of a "physician or dentist" as to the proximate cause of an injury or as to an injured party's disability or incapacity.  Ibid.  See Commonwealth v. Irene, 462 Mass. 600, 611-612 (2012).[2]  To be admitted, such records must be "subscribed and sworn to under the penalties of perjury by the physician, dentist, authorized agent of a hospital or health maintenance organization rendering such services."  G. L. c. 233, § 79G.  Furthermore, the party intending to offer such documents in evidence must give the opposing party ten days' notice by certified mail and file a copy of the notice and the return receipt with the clerk of the court.  Ibid.  See Mass. G. Evid. § 803(6)(C) (2016).[3]

---

[2] In one respect, § 79G is broader than § 79 in that it explicitly provides for the admissibility of opinions as to proximate cause, disability, or incapacity -- matters that "pertain to issues commonly involved in personal injury claims and litigation.  Thus, the concerns that require redaction of information not germane to the patient's treatment in medical records under § 79 are overridden by express language in § 79G." Commonwealth v. Schutte, 52 Mass. App. Ct. 796, 800 (2001) (citation omitted).  See Mass. G. Evid. § 803 note (2016).

[3] The attestation need not accompany the copy of the report served on the opposing party.  See Knight v. Maersk Container Serv. Co., 49 Mass. App. Ct. 254, 256 (2000).  Medical records created in the ordinary course of business "are not usually created or written with attestations of the author; the

The defendant now contends that the ambulance records were erroneously admitted as hospital records under § 79 for the simple reason that § 79 by its own terms is limited to records kept by hospitals, dispensaries or clinics, and sanatoria, as defined by G. L. c. 111, § 70. Because the language of the statute does not expressly include ambulance companies, the defendant's argument has some force. See McClean v. University Club, 327 Mass. 68, 75 (1951) ("The records which are admissible are those of hospitals of the class defined in § 70 which under that section they are required to keep. The statute has no application to the records of other hospitals"). On the other hand, "[o]ur decisions have demonstrated liberal interpretation of the statute in the admission of hospital records." Commonwealth v. Franks, 359 Mass. 577, 579 (1971).

The defendant's argument suffers from two principal flaws. First, at trial she objected only to the judge's refusal to redact certain references to intoxication; she did not argue that ambulance companies are not within the definition of hospitals. Accordingly, any claim of error in this regard is unpreserved and reviewed only for a substantial risk of a miscarriage of justice. Commonwealth v. McLaughlin, 79 Mass. App. Ct. 670, 673 (2011). Second, the records were not offered

_____

attestation is later obtained and at trial either accompanies or is affixed to the report." Ibid.

as hospital records under § 79, but rather as records of medical services under § 79G.

We conclude that the records produced by Cataldo were admissible as proffered, under § 79G.  While § 79G refers to the opinions of a "physician" or "dentist," the statute defines those professions broadly to also include "chiropodists, chiropractors, optometrists, osteopaths, physical therapists, podiatrists, psychologists and other medical personnel licensed to practice under the laws of the jurisdiction within which such services are rendered" (emphasis supplied).  The professions listed in § 79G are all licensed under G. L. c. 112, whereas EMTs are certified under G. L. c. 111C, § 3(b)(3).  See 105 Code Mass. Regs. §§ 170.900 (2005) (certification and training requirements for EMTs).  Nonetheless, we see no distinction between the registration and licensing regimes of c. 112 and the certification requirements of c. 111C that would exclude EMTs from the category of other licensed medical personnel.  Compare Ortiz v. Examworks, Inc., 470 Mass. 784, 792 (2015) (term "physicians" in personal injury protection statute, G. L. c. 90, § 34M, "encompasses not only medical doctors . . . but also other appropriate licensed or registered health care practitioners," specifically, licensed physical therapists).[4]

_____

[4] Although "licensed in the commonwealth," an EMT is not considered a "provider of health care" under the medical

Section 79G, like § 79, is intended to relieve physicians, nurses, dentists, and the other listed professionals of the hardship of attending court as witnesses, depriving patients of their care, where they are unlikely to remember specific patient interactions and their testimony "would ordinarily add little or nothing to the information furnished by the record alone." Irene, 462 Mass. at 614, quoting from 6 Wigmore, Evidence § 1707 (Chadbourn rev. ed. 1976). These principles apply equally to EMTs. The Cataldo records, prepared by licensed EMTs, were properly admitted under § 79G.[5]

Moreover, even if the ambulance records had been offered and admitted as hospital records under § 79, any error would not have created a substantial risk of a miscarriage of justice. The records admissible under § 79 are those that hospitals are statutorily required to maintain under G. L. c. 111, § 70. These include, "in the case of a patient brought to a hospital by an ambulance service licensed pursuant to chapter 111C, a copy of the call summary set forth in paragraph (15) of

_____

malpractice tribunal statute, G. L. c. 231, § 60B, inserted by St. 1975, c. 362, § 5. See Perez v. Bay State Ambulance & Hosp. Rental Serv., Inc., 413 Mass. 670, 675-676 (1992). Unlike § 79G, the list of the professionals included within the medical malpractice tribunal statute is exhaustive; it lacks the open-ended, "other medical personnel" clause.

[5] The Cataldo records were signed contemporaneously by the EMTs and later certified under penalties of perjury, pursuant to G. L. c. 233, § 79G, by "Diana M. Cataldo, Treasurer."

subsection (b) of section 3 of said chapter 111C."  G. L. c. 111, § 70, as appearing in St. 2000, c. 54, § 5.  The completed records admitted in evidence under the Cataldo certification had all the hallmarks of a call summary.  See G. L. c. 111C, § 3(b)(15), inserted by St. 2000, c. 54, § 3 (ambulance services "shall ensure that the responding personnel will complete a call summary for each call to which they respond containing such information and on such forms as prescribed by the department [of public health]").

Accordingly, Whidden, as a hospital, was required to maintain the Cataldo ambulance call summary, and had Whidden produced it along with its own records that were delivered to the clerk's office, the call summary would have been admissible under § 79.  See Commonwealth v. Moquette, 53 Mass. App. Ct. 615, 619 n.3 (2002), S.C., 439 Mass. 697 (2003) (based on amended definition of hospital records in G. L. c. 111, § 70, if declarants "had been taken to a hospital . . . , their statements, as recorded in the EMT's trip log, would now likely be admissible as hospital records under G. L. c. 233, § 79").[6]

References to intoxication.  At trial, the defendant objected to the references to her intoxication in the ambulance

---

[6] Indeed, if the defendant had timely objected, the Commonwealth may well have been able to show that Whidden did in fact produce the Cataldo records.  The Commonwealth commendably filed a motion in limine to air such issues before the trial commenced.

and hospital records based on the proviso in G. L. c. 233, § 79, that "nothing therein contained shall be admissible as evidence which has reference to the question of liability." However, § 79 "has long been construed to permit the admission of a record that relates directly and primarily to the treatment and medical history of the patient, 'even though incidentally the facts recorded may have some bearing on the question of liability.'" Commonwealth v. Dube, 413 Mass. 570, 573 (1992), quoting from Leonard v. Boston Elev. Ry., 234 Mass. 480, 482-483 (1920). "In application this liberal construction has permitted the admission in evidence of statements in hospital records bearing on criminal culpability that seem to relate at most only incidentally to medical treatment." Dube, supra.

In OUI cases, we have consistently approved the admission of medical records to show that a criminal defendant has consumed intoxicating liquor shortly before events that led to the defendant's arrest. See id. at 574, and cases cited. Records admissible in this context include hospital blood tests as well as "more personal, less scientific, judgments about alcoholic odor." Commonwealth v. McCready, 50 Mass. App. Ct. 521, 524 (2000). See Cowan v. McDonnell, 330 Mass. 148, 149 (1953) ("We are unable to say as matter of law that the [words] 'Odor of alcohol on breath' could not relate to . . . medical history" [citation omitted]); Commonwealth v. Gogan, 389 Mass.

255, 264 (1983) ("[A]n observation about alcohol on the patient's breath is admissible as part of a hospital record . . . even though the matters did not directly relate to the exact illness for which the patient entered the hospital" [citation omitted]); McCready, supra at 524 n.3 ("Regarding the relation of the drinking to medical treatment, . . . a patient who had recently consumed alcohol would not be a candidate to undergo anesthesia").  Such records are presumed reliable because they are made by medical professionals "charged with the responsibility of making accurate entries . . . relied on in the course of treating patients."  Bouchie v. Murray, 376 Mass. 524, 528 (1978).

Thus, the judge did not abuse his discretion in admitting the partially redacted medical records over the defendant's objection.[7]

Evidence of operation.  To support an OUI conviction under G. L. c. 90, § 24(1)(a)(1), the Commonwealth must prove three elements:  (1) operation of a vehicle, (2) on a public way, (3) while under the influence of alcohol.  Commonwealth v. O'Connor, 420 Mass. 630, 631 (1995).  The defendant maintains that the

---

[7] The defendant also argues that "it is unclear whether Registered Nurse Florence Silva or a person by the name of Bryan Canterbury" made the entry that the defendant was "intoxicated." Although the document in question is authored by both Silva and Canterbury ("Author Type:  Physician"), it makes no difference whether a nurse or a physician made the entry.  McCready, supra at 524.

Commonwealth's evidence of the first element, operation of a vehicle, was insufficient to support a guilty verdict.  We disagree.

The Commonwealth presented ample evidence, both direct and circumstantial, sufficient for the jury to conclude beyond a reasonable doubt that the defendant operated a motor vehicle. The other driver testified that "Palacios hit my car."  An eyewitness at the scene of the accident testified that someone helped the defendant out of her car, and both this witness and the other driver testified that no one but the defendant was in her car after the accident.  The defendant gave the officer her identification and responded to his questions about whether she had been drinking.  See Commonwealth v. Cromwell, 56 Mass. App. Ct. 436, 439 (2002), citing Commonwealth v. O'Connor, 420 Mass. 630, 632 (1995) (operation could be inferred from cooperation with police investigation).  The evidence, viewed as a whole, was sufficient to prove operation beyond a reasonable doubt. See id. at 438-439; Commonwealth v. Petersen, 67 Mass. App. Ct. 49, 52-53 (2006).

                    Judgment affirmed.