NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-228

COMMONWEALTH

vs.

ARTHUR BUBANAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of assault and battery on a person with a disability in violation of G. L. c. 265, § 13K (b).  He challenges the admission at trial of (1) a police officer's identification, (2) the victim's redacted medical records, and (3) testimony about the victim's intellectual disability.  We affirm.

Background.  The jury could have found that, on August 27, 2021, the victim went into a local market in Lowell and bought a scratch ticket, then walked out the door and was attacked by two men.  A cashier at the market who knew the victim saw him leave the store, then described having heard "banging on the window," including "a big thud"; the cashier then looked out the front

window and saw two people, including an "older guy" with white hair "dressed in orange." An indoor store security camera captured images of the attack, and this footage was admitted in evidence and played at trial. When the cashier walked outside, he found the victim on the ground, "bloodied up and beaten up." The man in the orange shirt came into the store and then left, turning toward a local bar.

The owner of the bar, who had known the defendant for forty or fifty years, saw the defendant enter the bar wearing an orange shirt. The defendant was with a second man. There was a "commotion" on the street and, when the bar owner asked what was going on, the defendant said, "We just whacked this kid." The bar owner called 911; the defendant and the man he was with ran away.

Discussion. We address in turn the defendant's three challenges to the conduct of trial.

1. Officer identification. The defendant maintains that a police officer should not have been allowed to identify the defendant as the man in the orange shirt on the store surveillance video footage. The decision to admit witness identification testimony is committed to the discretion of the trial judge. See Commonwealth v. Pleas, 49 Mass. App. Ct. 321, 328 (2000). The defendant moved in limine to exclude this evidence, then renewed the objection at trial, so we review for

prejudicial error.  Commonwealth v. Brum, 492 Mass. 581, 590 (2023).  "This requires a two-part analysis:  (1) was there error; and (2) if so, was that error prejudicial.  An error is not prejudicial if it 'did not influence the jury, or had but very slight effect.'"  Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

"Making a determination of the identity of a person from a photograph or video image is an expression of an opinion."  Commonwealth v. Pina, 481 Mass. 413, 429 (2019).  "The general rule is that a witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury."  Id. at 429-430, quoting Commonwealth v. Vacher, 469 Mass. 425, 441 (2014).  "Put another way, such testimony is admissible . . . when the witness possesses sufficient relevant familiarity with the defendant that the jury cannot also possess."  Pina, supra at 430, quoting Vacher, supra.  Courts also consider the quality of the image, requiring that the images be "neither so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification" (quotation and citation omitted).  Pleas, 49 Mass. App. Ct. at 325.

3

After reviewing the video footage, the judge found that it was not "so hopelessly blurry or unmistakably clear under the relevant case law" that the officer, "provided there's a proper foundation, wouldn't be able to offer an opinion that it was the Defendant."  Having viewed the video footage, we agree with the judge that its quality did not preclude identification opinion testimony.  The judge later allowed the Commonwealth's motion in limine to admit the officer's testimony subject to a voir dire.

That voir dire established that the officer knew the defendant as a regular umpire at little league baseball games where the officer had coached from 2004 until approximately ten years before trial.  During those interactions, the officer was face-to-face with the defendant and spoke with him.  He also knew the defendant from visits to a "notorious bar" that was in the officer's district when he was a patrol officer, and from responding to "disturbance calls" at the defendant's address.  Overall, the officer estimated he had seen the defendant at least twenty-five times and had interacted with him at least fifteen to twenty times.  After that voir dire, the judge allowed the identification.  Pursuant to the judge's rulings, the officer did not testify at trial about the "notorious bar" interactions nor about his contacts at the defendant's address.

Furthermore, the judge permissibly concluded that the officer's prior contact with the defendant afforded him

4

"sufficient relevant familiarity with the defendant that the jury cannot also possess," Pina, 481 Mass. at 430, quoting Vacher, 469 Mass. at 441, to permit him to identify the defendant. Even were we skeptical about the propriety of this identification -- which we are not -- there was no prejudice where (1) the jurors were instructed that they should make an independent determination as to the identity of the person they saw on the video footage and (2) the defendant was also identified at trial by an acquaintance of many decades who described the defendant's orange shirt (clearly visible on the video footage) and quoted the defendant as saying he had just "whacked" someone.

2. Victim's medical records. The defendant challenges the admissibility of the victim's medical records to establish that he was a person with an intellectual disability, an essential element of the defendant's conviction. The admission of the victim's medical records was the subject of pretrial motion practice. Based on the resulting rulings, the Commonwealth entered some of the victim's medical records in evidence pursuant to G. L. c. 233, § 79G, subject to judicially imposed limits. "We review evidentiary rulings for abuse of discretion," Commonwealth v. Denton, 477 Mass. 248, 250 (2017), reversing only if the judge made "a clear error of judgment in weighing the factors relevant to the decision . . . such that

5

the decision falls outside the range of reasonable alternatives" (quotation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  Because the defendant "objected only to the judge's refusal to redact certain references" to the victim's intellectual disability and did not argue that the records fell outside the scope of the statute, "any claim of error . . . is unpreserved and reviewed only for a substantial risk of a miscarriage of justice."  Commonwealth v. Palacios, 90 Mass. App. Ct. 722, 725 (2016).[1]

The defendant now contends that the records were erroneously admitted under G. L. c. 233, § 79G, because the author was not known and the statements did not come from a qualifying physician.  We conclude that there was no error because the records were admissible under G. L. c. 233, § 79.  See Palacios, 90 Mass. App. Ct. at 726-727.  That section provides that certain hospital records are admissible as evidence "so far as such records relate to the treatment and medical history" of the person treated, G. L. c. 233, § 79, and, when they have been authenticated, allows their admission in the discretion of the trial judge.  Commonwealth v. Copeland, 375

_____

[1] Both parties maintain that the error was preserved and that the applicable standard of review is prejudicial error.  We disagree for the reason stated above.  But it makes no difference here; were we to consider the admission under the prejudicial error standard, we would reach the same conclusion.  See Cruz, 445 Mass. at 591.

6

Mass. 438, 441-442 (1978).  The statute "in effect provides an exception to the hearsay rule, allowing hospital records to be admitted to prove the truth of the facts contained therein, in so far as those facts pertain to treatment and medical history." Copeland, supra at 442.  "[T]he rule to be applied is that hospital records containing facts relevant to medical history or treatment are admissible without need for, and despite the absence of, testimonial corroboration."  Id.

The contested records meet this standard.  They relate to the victim's treatment and medical history and "possess the characteristics justifying the presumption of reliability." Bouchie v. Murray, 376 Mass. 524, 528 (1978).  One challenged record appears on the emergency department admission form, written by the hospital professional conducting triage for head injuries in an intellectually disabled person; the other appears in treatment notes from the victim's medical provider and lists a "past medical history" including "mild mental retardation." The judge did not abuse his discretion in admitting these records given that they were "of a nature . . . relied on by medical professionals in administering health care." Commonwealth v. Johnson, 59 Mass. App. Ct. 164, 169 (2003).

Even had the admission been in error, the defendant failed to demonstrate that it gave rise to a substantial risk of a miscarriage of justice.  See Palacios, 90 Mass. App. Ct. at 725.

These two isolated statements in the medical records were but two pieces of evidence related to the victim's intellectual disability. As described more fully below, percipient witnesses -- including the victim's sister -- testified about manifestations of the victim's disability. And, importantly, the victim himself testified, affording the jury an opportunity to see how he understood and responded to questions.

3. _Testimony about the victim's intellectual disability_. The defendant challenges as overly prejudicial testimony by two percipient lay witnesses to observations of the victim's functioning. "Whether proffered evidence is relevant and whether its probative value is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are not disturbed absent palpable error" (quotation and citation omitted). Commonwealth v. Spencer, 465 Mass. 32, 48 (2013). See L.L., 470 Mass. at 185 n.27. Having reviewed the challenged evidence, we discern no error.

A responding police officer was allowed to testify that he spoke to the victim in "a certain way," namely "slower, clearer" than his usual manner. The witness did not testify as to what the victim could understand, or that he was intellectually disabled -- rather, this testimony was relevant to the officer's perception of the victim, and therefore properly admitted. See Commonwealth v. Sliech-Brodeur, 457 Mass. 300, 330 n.43 (2010)

8

("observations were properly admitted" when they "represented summary descriptions . . . based on the sensory reactions of [a person] . . . and [did] not [require] special learning or experiment" [quotation and citation omitted]).

The victim's older sister testified that her brother had been in "special education" classes beginning in kindergarten, had worked only briefly, and had never lived independently.  She described her "special responsibilities" in taking care of him; she is his court-appointed guardian who helps with daily living needs, including hygiene, cooking, dressing, shopping, paying rent and cell phone bills, and managing any financial needs.  Appropriately, the judge did not permit the sister to give a diagnosis.  The sister's observations were relevant to the jury's understanding of the victim's intellectual capabilities, a central issue in the case.  See Commonwealth v. Aitahmedlamara, 63 Mass. App. Ct. 76, 77 (2005); Commonwealth v. Fuller, 66 Mass. App. Ct. 84, 89-91 (2006).  While prejudicial,

9

their probative value was not substantially outweighed by the danger of unfair prejudice.  See Spencer, 465 Mass. at 48.

Judgment affirmed.

By the Court (Singh,
Hershfang & Wood, JJ.[2]),

Clerk

Entered:  March 23, 2026.

---

[2] The panelists are listed in order of seniority.