COMMONWEALTH vs. WILLIAM H. JONES, JR.

Hampshire. September 4, 2012. - December 18, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Breathalyzer test, Relevancy and materiality. *Practice, Criminal,* Motion in limine, Waiver. *Waiver.*

Discussion of the standard of review, i.e., substantial risk of a miscarriage of justice, applicable to the denial of a criminal defendant's pretrial motion to admit evidence, where the defendant neither proffered such evidence at trial nor objected to its exclusion. [18-19]

At the trial of a complaint charging operating a motor vehicle while under the influence of intoxicating liquor, there was no error in the exclusion of evidence that, shortly after the defendant declined to take a breathalyzer test, he requested but was not given the test, where it was well within the judge's discretion to determine that such minimally probative evidence of consciousness of innocence was substantially outweighed by the potential for prejudice, in that it could cause the jury to focus unduly on whether the defendant had recanted his refusal rather than on whether his ability to operate a motor vehicle had been impaired. [19-22]

COMPLAINT received and sworn to in the Northampton Division of the District Court Department on May 17, 2010.

The case was tried before *Richard J. Carey,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Daniel W. Korbacher* (*Dana Alan Curhan* with him) for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

LENK, J. The defendant was convicted by a jury of operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24 (1) (*a*) (1). Prior to trial, the defendant moved in limine to admit evidence that, shortly after he had declined to take a breathalyzer test, he changed his mind and requested but was not given the test. The judge denied the

motion, and at trial, the defendant neither proffered such evidence nor renewed his objection to its exclusion. The defendant appealed from his conviction, and we granted the Commonwealth's application for direct appellate review. Because we conclude that the judge did not err in excluding the evidence, we affirm the defendant's conviction.

1. *Background.* On May 14, 2010, Marie Clark was driving north on Route 10 in Southampton when she observed a pickup truck being driven erratically. She alerted police, who thereafter followed and then stopped the truck. The defendant was the driver of the truck and its sole occupant. The two police officers present noticed a strong odor of alcohol coming from inside the vehicle. Officer Dennis R. Scribner of the Easthampton police department observed that the defendant was "very unsteady on his feet," his eyes were bloodshot and glassy, and his pants were wet from admitted incontinence. Scribner saw a partially consumed and still cold forty-ounce bottle of beer sticking out of a bag beside the driver's seat. Scribner testified that he administered a field sobriety test, and the defendant performed poorly. Both officers believed that the defendant was under the influence of alcohol; Scribner arrested him at the scene.[1]

On the morning of trial, the defendant moved in limine that he be permitted to testify that, at the police station, he initially declined to take a breathalyzer test, then "shortly afterwards" changed his mind and asked to take the test, but one was not administered. Although the prosecutor "really [had] no objection to that evidence coming in," he expressed concern as to what evidence the Commonwealth would be permitted to introduce in order to "give the Commonwealth's version of

---

[1]The defendant claims error in the testimony of one of the police officers, who stated that the defendant was "drunk" on the night in question. He argues that the officer thereby invaded the fact-finding province of the jury by offering an opinion as to the ultimate question of guilt or innocence. See *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982). This argument is without merit. In a prosecution for operating a motor vehicle while under the influence of alcohol, lay witnesses, including police officers, may not opine as to the ultimate question whether the defendant was operating while under the influence, but they may testify to his apparent intoxication. See, e.g., *Commonwealth* v. *Sudderth*, 37 Mass. App. Ct. 317, 321 (1994), citing *Commonwealth* v. *Atencio*, 12 Mass. App. Ct. 747, 750-751 (1981) ("The opinion testimony of police who observed the defendant may also be taken into account").

facts more credibility." Specifically, the prosecutor suggested that, if the defendant were allowed so to testify, the Commonwealth would seek to introduce evidence that the defendant did not recant his initial refusal, and that he had also refused certain field sobriety tests. The prosecutor stated that the defendant's proposed testimony had the "potential for opening a can of worms." The judge denied the defendant's motion. The defendant neither objected to the ruling nor thereafter raised the subject in any manner at trial.

2. *Standard of review.* Where a defendant does not preserve a claim of error at trial, we review the alleged error to determine whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). "It is well established that a motion in limine, seeking a pretrial evidentiary ruling, is insufficient to preserve appellate rights unless there is an objection at trial." *Commonwealth* v. *Whelton*, 428 Mass. 24, 25 (1998), citing *Commonwealth* v. *Keniston*, 423 Mass. 304, 308 (1996). See Mass. G. Evid. § 103(a)(3) (2012).[2] Without an objection at trial, which gives the judge an opportunity to reconsider the issue in context, any harm resulting from a ruling in limine is purely speculative. See *Luce* v. *United States*, 469 U.S. 38, 41-42 (1984) ("The ruling is subject to change when the case unfolds . . . . Indeed even if nothing unexpected happens at trial, the . . . judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling").

Here, the defendant moved in limine, pretrial and without success, to admit evidence, but neither proffered that evidence at trial nor objected to its exclusion. The defendant contends, however, that the motion in limine served to preserve the error because it sought to admit rather than exclude evidence and, once denied, there was "no logical time or place at trial to renew an objection." This argument is without force, since counsel could readily have sought a sidebar conference, for example, at the close of the Commonwealth's case or before or

---

[2]However, where a defendant moves in limine to suppress evidence on constitutional grounds, pretrial objection to the denial of the motion preserves appellate rights. See *Commonwealth* v. *Acosta*, 416 Mass. 279, 284 n.1 (1993).

during the defendant's testimony,[3] either to proffer the subject testimony once again or to raise an objection to its exclusion. Reliance solely on a motion in limine seeking a pretrial evidentiary ruling, as here, ordinarily does not preserve appellate rights.[4] See *Commonwealth* v. *Whelton, supra.*[5]

3. *Evidence of recantation.* In any event, no matter which standard of review applies, there was no error. Generally,

[3] The defendant testified at trial, stating that he had consumed two or three beers that evening but was not impaired and had no trouble driving.

[4] Our ruling today does not change the principle that the adequacy of an objection is to be considered "in the context of the trial as a whole." *Commonwealth* v. *Koney,* 421 Mass. 295, 299 (1995). There may well be cases where a defendant fails to renew an objection at trial, but we nonetheless discern persuasive reasons to consider the objection preserved. For example, where a defendant objects to the denial of a motion in limine, and the judge offers assurances such as, "Your objection is noted, and your rights are saved," the defendant need not renew his objection at trial in order to preserve appellate rights. See *Commonwealth* v. *Aviles,* 461 Mass. 60, 66 (2011). Here, the defendant did not object to the denial of his motion at any point.

[5] The defendant maintains as well that the asserted error is of constitutional dimension, as the Sixth and Fourteenth Amendments to the United States Constitution, as well as art. 12 of the Massachusetts Declaration of Rights, guarantee him the right to present his theory of defense. However, a defendant is not necessarily deprived of the right to present his theory of defense simply because the judge excludes a piece of evidence supporting such theory. See *Commonwealth* v. *Bizanowicz,* 459 Mass. 400, 419 (2011).

Here, exclusion of the proffered testimony did not prevent the defendant from presenting his theory of defense, i.e., that he did not operate his vehicle while under the influence of alcohol. The defendant testified at trial that he drank only two or three beers that night; that he drank only a sip from the forty-ounce bottle of beer the officers found in his truck; that he was not speeding, driving erratically, or operating his vehicle while impaired in any way; and that he only urinated on himself because he urgently needed to use the bathroom when the officers pulled him over. He also testified that, contrary to police testimony, he was never asked to recite the alphabet as a field sobriety test. The defendant's brother testified that damage the police observed on the defendant's truck predated the night in question. In closing argument, defense counsel asked the jury to find the defendant's testimony credible and argued that the Commonwealth had failed to prove the defendant was operating while under the influence of alcohol. Given this, the defendant's theory of defense was clearly presented, even without the proffered testimony suggesting consciousness of innocence.

Additionally, the defendant suggests that he had a "right" to a breathalyzer test. We note simply that a suspect has no right to a police-administered breathalyzer test. See *Commonwealth* v. *Alano,* 388 Mass. 871, 874 (1983) ("The statute . . . does not confer a right to a chemical test . . ."). Compare G. L. c. 263, § 5A (providing right to independent medical examination).

determinations as to the admissibility of evidence lie "within the sound discretion of the [trial] judge." *Commonwealth* v. *Dunn*, 407 Mass. 798, 807 (1990). See Mass. G. Evid., *supra* at § 403. The judge may properly exclude relevant evidence if its probative value is substantially outweighed by the risk that its admission would, for example, confuse the issues, mislead the jury, or prove unnecessarily time consuming. See *Commonwealth* v. *Rosa*, 422 Mass. 18, 25 (1996) ("When prejudice, including confusion of the jury, is possible, the judge must weigh the probative value of the evidence against such danger"); *Commonwealth* v. *Beausoleil*, 397 Mass. 206, 217 (1986) (trial judge has "general power" to exclude evidence that creates substantial danger of confusing issues or misleading fact finder); *Commonwealth* v. *Cruz*, 53 Mass. App. Ct. 393, 407-408 (2001) (trial judge may exclude marginally relevant evidence as "unduly time-consuming, collateral [or] confusing"); Mass. G. Evid., *supra*.

Here, the judge acted within the scope of his discretion in excluding the proffered testimony. The defendant sought to testify that, shortly after declining to take a breathalyzer test, he requested to do so.[6] Such evidence could only exculpate the defendant to the extent it suggested a consciousness of innocence at the time the request was made. However, we have held that "consciousness of innocence is of very little value, because there are a variety of different motives that can prompt action consistent with innocence." *Commonwealth* v. *Espada*, 450

---

[6]The defendant's initial refusal to take the breathalyzer test ordinarily could not be admitted in evidence against him. See G. L. c. 90, § 24 (1) (*e*) ("Evidence that the defendant failed or refused to consent to such test or analysis shall not be admissible against him in a civil or criminal proceeding . . ."). The statute does not address whether a recantation of that refusal, or a request that the test be administered, is admissible. Because the statute bars only the admission of refusal evidence "against" the defendant, *id.*, and because the defendant may in any case waive his right against self-incrimination, see, e.g., *Commonwealth* v. *Connors*, 447 Mass. 313, 319 n.10 (2006), the statute does not preclude the defendant from seeking to introduce refusal evidence if trial strategy so demands. Likewise, the statute does not preclude the defendant from seeking to introduce evidence as to recantation of such refusal. Admission of such evidence would allow the Commonwealth to introduce evidence to the contrary. Whether it would permit the Commonwealth to introduce evidence that the defendant also refused to participate in field sobriety testing is a question we need not reach.

Mass. 687, 698 (2008). A suspect's recantation of an initial refusal to take a breathalyzer test is arguably as consistent with the desire to avoid suspension of the suspect's driver's license as it is with consciousness of innocence. See G. L. c. 90, § 24 (1) (*f*) (1) (mandating suspension of driver's license upon refusal to submit to breathalyzer test).[7] We discern no abuse of discretion in the judge's apparent decision to accord little probative weight to this evidence and to conclude that any probative value was substantially outweighed by the potential for prejudice. The prosecutor's statement that the proposed testimony "has potential for opening a can of worms" suggested that the testimony could unduly prolong the trial, raise evidentiary difficulties, and mislead the jury. It was well within the judge's discretion to determine that the minimally probative evidence proffered could divert the aim of the trial, causing the jury to focus unduly on whether the defendant recanted his refusal to take the breathalyzer test rather than on whether his ability to operate a motor vehicle was impaired by the influence of intoxicating liquor.[8]

---

[7] The same statute obligates police officers to inform suspects of this penalty. G. L. c. 90, § 24 (1) (*f*) (1). Presuming as we do that the officers followed protocol, cf. *Commonwealth* v. *Lopez*, 426 Mass. 657, 664-665 (1998) (presuming prior plea proceedings were valid), the defendant knew at the relevant time that his driver's license would be suspended if he refused to submit to a breathalyzer test.

[8] The defendant urges us to consider the question, briefed by both parties, whether he in fact "refuse[d]" the breathalyzer test under G. L. c. 90, § 24 (1) (*f*) (1). He argues that, because he requested a breathalyzer test "shortly after[]" he initially declined the same, he should not be deemed to have "refuse[d]" the test under the statute. Characterizing the case as one of statutory interpretation, he argues that we must decide the meaning of the word "refuses" in G. L. c. 90, § 24 (1) (*f*) (1). He notes that authority elsewhere is split on whether a refusal can be recanted under comparable implied consent statutes, and he urges us to adopt a "flexible" approach, such as that taken in *Lund* v. *Hjelle*, 224 N.W.2d 552, 557 (N.D. 1974). We decline to reach this question for at least two reasons.

First, we need not reach the question to resolve this case. The defendant challenges his criminal conviction, claiming that evidence was improperly excluded. Interpretation of the word "refuses" is, however, not necessary in this context to determine whether there was error. Unlike most of the cases cited by the parties concerning the meaning of the term "refuses," see, e.g., *id.*, this is not a case involving the civil suspension of a driver's license resulting from an alleged refusal to take a breathalyzer test, where the meaning of the statutory term "refuses" would be directly at issue. See G. L. c. 90,

Because the judge acted within the scope of his discretion, there was no error.

*Judgment affirmed.*

---

§ 24 (1) (*f*) (1). Second, the factual record here is not well developed. The record contains little information, for example, as to the circumstances surrounding the defendant's alleged request for a breathalyzer. Further, it contains no information as to the protocol for breathalyzer test administration or transmission of test data to agencies involved in implementing license suspension.