NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-192                                          Appeals Court

COMMONWEALTH  vs.  JUDITH A. GALLAGHER.

No. 16-P-192.

Hampden.     February 7, 2017. - April 21, 2017.

Present:  Green, Meade, & Agnes, JJ.


Motor Vehicle, Operating under the influence.  Intoxication.
     Evidence, Intoxication, Opinion.  Practice, Criminal,
     Witness.  Witness, Police officer.


     Complaint received and sworn to in the Chicopee Division of
the District Court Department on June 30, 2014.

     The case was tried before Bethzaida Sanabria-Vega, J.


     Colin Caffrey for the defendant.
     Kelsey A. Baran, Assistant District Attorney, for the
Commonwealth.


     MEADE, J.  After a jury trial, the defendant was convicted

of operating while under the influence of intoxicating liquor

(OUI), in violation of G. L. c. 90, § 24(1)(a)(1).  On appeal,

she claims that the judge improperly admitted a State trooper's

testimony concerning her impairment to operate a motor vehicle,

and that the evidence was insufficient to support her conviction.  We affirm.

1.  Background.  a.  The incident.  In the early morning hours of June 29, 2014, the Massachusetts State police were conducting an OUI checkpoint on Route 33 in Chicopee.[1]  State Trooper John Haidousis, who had ten years of experience working in law enforcement,[2] was assigned to work the secondary location, i.e., the parking lot of Monroe Muffler, a business located directly off of Route 33.[3]  The business parking lot was brightly lit, the ground was flat and paved, and individual parking spots were marked visibly by painted lines on the pavement.

At about 12:15 A.M., the defendant, as directed by another trooper, drove her vehicle into the secondary location parking lot without incident.  Trooper Haidousis directed her to park in one of the marked parking spots.  The defendant failed to do as instructed, instead parking her vehicle "crooked[ly]" or "diagonally across two parking spots."  Upon request, the defendant produced a driver's license and perhaps a

---

[1] Route 33 is a main thoroughfare in Chicopee that is located in close proximity to the Massachusetts Turnpike.

[2] Trooper Haidousis was trained in investigating OUI cases at the police academy.

[3] An OUI checkpoint consists of two locations.  The first is a primary stop, where troopers will initially stop motor vehicles and converse with the drivers.  The second location is where a driver who is suspected of being under the influence of alcohol will be directed and questioned further.

registration; Trooper Haidousis determined that she was seventy-one years old.

As Trooper Haidousis spoke to the defendant he detected an odor of alcoholic beverage coming from her mouth, and observed her eyes to be "bloodshot and glassy."  Trooper Haidousis asked the defendant whether she had consumed any alcohol, to which she replied that she had consumed three beers, and had started drinking around midnight.  Her speech was "a bit slurred."  Based on these observations, Trooper Haidousis asked the defendant to perform field sobriety tests, to which she consented.

When the defendant got out of her car, the trooper again detected the smell of alcohol coming from her person.  She was wearing flip-flop-style shoes.  He instructed her to stand in one spot, and as he explained the field sobriety tests, he observed her "swaying a bit back and forth."  When asked if she had any injuries that would prevent her from performing the tests, the defendant replied that she had arthritis in her hips, but she nonetheless agreed to perform the tests.

Trooper Haidousis first had the defendant perform the "nine-step walk and turn" test.  To perform this test, the defendant was instructed to stand up straight, and to keep her arms by her sides.  She was told to take nine forward steps on a painted straight line in the parking lot, heel to toe, while

counting out loud to nine.  At the ninth step, the defendant was to turn around and walk nine steps back in the same fashion, i.e., heel to toe, while she counted out loud to nine, keeping her hands by her sides the entire time.  The defendant listened to the instructions, and began the test without incident.

During the first part of the test, the defendant did not take all nine steps, instead taking only seven, and she stepped off of the painted line.  She also failed to touch her heel to her toe, as instructed, on each step.  On the return trip, she only took six of the nine required steps, again stepping off of the line, and again missing the heel to toe instruction. Trooper Haidousis explained in his testimony that failure to take all nine steps is an "indicator[] that we look for."

The defendant was then instructed to complete the "one-leg stand" test, which is another standardized field sobriety test to detect impairment due to alcohol consumption.  She was instructed to stand with her arms by her sides.  Then she was to raise one leg of her choice approximately six inches off of the ground, while she kept her arms by her sides.  Once her leg was elevated, the defendant was required to count out loud until she reached thirty.  Trooper Haidousis used his wristwatch to track the accuracy of the defendant's thirty-second count.  The defendant listened to the instructions and began the test without incident.  However, the defendant was unable to complete

the test as instructed as she put her foot down after only ten or eleven seconds.  She was also "swaying from side to side, not standing up straight," and failed to count out loud, as she had been instructed.[4]

The final field sobriety test the trooper had the defendant perform was the recitation of the alphabet.  In preparation for this test, the trooper asked the defendant what was the highest level of education she had attained, and if she knew the alphabet.  The defendant properly recited the alphabet.

After he finished administering the field sobriety tests, Trooper Haidousis "formed the opinion that [the defendant] was under the influence of alcohol."  When asked if he made a determination as to the level of the defendant's impairment, the trooper replied, over objection, that "her ability -- she was impaired to operate a motor vehicle."  Trooper Haidousis based this determination on his detection of an odor consistent with alcohol emanating from the defendant, her glassy and bloodshot eyes, her slurred speech, her admission to consuming alcohol, and her performance on the field sobriety tests, as well as the manner in which she parked her car in the secondary location.  Based on these factors, Trooper Haidousis arrested the defendant

---

[4] Trooper Haidousis was aware that the DWI Detection and Standardized Field Sobriety Testing manual suggests that people older than the age of sixty-five or those with back, leg, or inner ear problems may have trouble performing these two tests.

for OUI.  Subsequent to Trooper Haidousis's testimony, the parties stipulated to the elements of operation and public way.

b.  Jury instructions.  As part of her final charge to the jury, the judge instructed the jury that:

> "Your function as the jury is to determine the facts of this case.  You are the sole and exclusive judges of the facts.  You alone determine what evidence to accept, how important any evidence is that you do accept, and what conclusions to draw from all the evidence.  You must apply the law as I give it to you, to the facts as you determine them to be, in order to decide whether the Commonwealth has proved [the defendant] guilty of this charge."

She also instructed that they were "not to be swayed by prejudice or by sympathy, by personal likes or dislikes, toward either side."

After she instructed the jury on the elements of the crime, the judge reminded the jury of the stipulation and its effect. She also instructed on what it means to be "under the influence of alcohol," and she gave a specific instruction regarding Trooper Haidousis's opinion relative to the defendant's level of impairment:

> "You have heard testimony of an opinion about [the defendant's] sobriety.  Ultimately, it is for you as the jury to determine whether she was under the influence of alcohol, according to the definition I have provided.  You may consider any opinion you have heard and accept it or reject it.  In the end, you and you alone must decide whether she was under the influence of intoxicating liquor."

Both the Commonwealth and the defendant were satisfied with the judge's charge to the jury.

2.  Discussion.  a.  Opinion testimony.  The defendant claims that the judge erred by admitting Trooper Haidousis's testimony that she was "impaired to operate a motor vehicle." We agree, but we conclude the error was not prejudicial.

Because the claimed error was preserved, we must determine whether the admission in evidence of the improper opinion constituted prejudicial error.  "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial."  Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting from Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).  See Kotteakos v. United States, 328 U.S. 750, 764 (1946).

"In a prosecution for operating a motor vehicle while under the influence of alcohol, lay witnesses, including police officers, may not opine as to the ultimate question whether the defendant was operating while under the influence, but they may testify to [her] apparent intoxication."  Commonwealth v. Canty, 466 Mass. 535, 541 (2013), quoting from Commonwealth v. Jones, 464 Mass. 16, 17 n.1 (2012).  A lay opinion, as opposed to an expert opinion, is admissible "only where it is '(a) rationally based on the perception of the witness; (b) helpful to a clear

understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge.'" Commonwealth v. Canty, supra, quoting from Mass. G. Evid. § 701 (2013).

Here, Trooper Haidousis testified that after observing the defendant and administering the field sobriety tests, he "formed the opinion that [the defendant] was under the influence of alcohol." When asked if he made a determination as to the defendant's "level of impairment," Trooper Haidousis stated that he determined that the defendant "was impaired to operate a motor vehicle." The first portion of this testimony, i.e., the opinion that the defendant was under the influence of alcohol, was proper. See Commonwealth v. Saulnier, 84 Mass. App. Ct. 603, 605 (2013). However, the second portion, where the trooper opined that the defendant's level of intoxication rendered her impaired to operate her vehicle, is the type of evidence that was prohibited in Canty, supra at 544. This type of testimony comes close to an opinion on the ultimate issue of guilt or innocence, and presents a danger of unfair prejudice. See id. at 543-544. At the same time, in view of the whole case, the prejudice flowing from this opinion would be relatively modest given what must have been obvious to the jury, i.e., that the arresting trooper believed the defendant's ability to operate her car was impaired by alcohol consumption.

Here, the judge gave a specific instruction regarding Trooper Haidousis's opinion relative to the defendant's level of impairment. The instruction told the jury that it was for them, and them alone, to determine whether the defendant was under the influence of alcohol, and that the jury were free to accept or reject any opinion on the issue. The instruction was nearly verbatim of that given in Canty, where the Supreme Judicial Court found no prejudicial error in the opinion testimony of the officer. Id. at 545 ("Any such risk [of prejudice] was diminished by the judge's explicit final instruction to the jury that they ultimately must determine whether the defendant was under the influence of alcohol, and that they may consider any opinion they heard about the defendant's sobriety 'and accept it or reject it'"). The inclusion of this instruction greatly diminished the risk of any prejudicial effect the improper opinion testimony may have had on the jury. See ibid.[5]

Furthermore, there was compelling, if not overwhelming, evidence that supported the jury's conclusion -- apart from the

[5] The dissent takes issue with the propriety of the Supreme Judicial Court's conclusion in Canty that this instruction ameliorates the risk of prejudice. See post at    . The defendant made this claim neither at trial nor in his appellate brief, and the issue is not before us. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975) (claims not raised in briefs are waived). In any event, even if we were inclined, we lack the authority to "alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided." Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003).

improper opinion testimony -- that the defendant's intoxication impaired her ability to operate a motor vehicle. See ibid. Cf. Commonwealth v. Saulnier, supra at 607 (no substantial risk of miscarriage of justice where improper opinion testimony about defendant's impaired ability to operate motor vehicle outweighed by overwhelming evidence of diminished capacity). From the very beginning of the encounter with the troopers, the defendant exhibited signs of alcohol impairment. When she pulled into the secondary location, she failed to follow instructions to park in a single designated parking space, and instead parked her vehicle in a crooked manner across two spaces. Her eyes were glassy and bloodshot, and her speech was "a bit slurred." Trooper Haidousis detected an odor of alcohol coming from the defendant when she was in her vehicle and when she exited the vehicle. Most notably, the defendant admitted to consuming three beers at midnight, which was approximately fifteen minutes before she arrived at the secondary location.[6]

In addition, while the defendant stood outside her car and received instructions on how to perform the field sobriety tests, she swayed back and forth. During the nine-step walk and turn test, she failed to touch her heel to her toe, failed to

---

[6] Although it is unlikely the defendant actually could have consumed three beers in fifteen minutes, she nonetheless admitted to drinking alcohol, and the implausibility of her expressed timeline lends further support to the jury's conclusion that she was impaired.

remain on the painted line as instructed, and completed only thirteen of the eighteen over-all required steps. When the defendant attempted the one-leg stand test, she failed to elevate her foot as instructed for the designated amount of time, she was unable to stand up straight, she failed to count aloud, and she swayed from side to side.[7]

Although the defendant was able to recite the alphabet, the remainder of her performance on the field sobriety tests as well as her behavior ancillary to the tests and her physical symptoms provided overwhelming evidence that her ability to operate was impaired by her alcohol consumption. When this evidence is coupled with the judge's instruction on opinion testimony, as well as the remainder of her instructions, and viewed against the backdrop of the entire trial, which includes the improper admission of the trooper's opinion, we are fairly assured that the jury were not substantially swayed by the error. See Commonwealth v. Flebotte, 417 Mass. at 353. To the extent there was any resulting effect on the jury occasioned by the trooper's

---

[7] The dissent's suggestion, post at     , that jurors should be instructed that testimony relative to field sobriety tests is not scientific is not a claim raised by the defendant, and it is not before us. See note 5, supra.

opinion, it was slight.  See <u>Kotteakos</u> v. <u>United States</u>, 328 U.S. at 765.[8]

b.  <u>Sufficiency of the evidence</u>.  The defendant also claims that there was insufficient evidence to support her conviction. We disagree.  "When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether <u>it</u> believes that the evidence at the trial established guilt beyond a reasonable doubt.' . . . Rather, the relevant 'question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), quoting from <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979)." <u>Commonwealth</u> v. <u>Rocheteau</u>, 74 Mass. App. Ct. 17, 19 (2009).

---

[8] The dissent posits, <u>post</u> at     , that unlike <u>Canty</u>, the error was prejudicial because there were different or additional indicia of impairment in <u>Canty</u> not present here.  For example, the dissent identifies the absence of erratic driving in this case that was present in <u>Canty</u>. See <u>post</u> at    .  However, evidence of erratic driving is not a necessary component of the Commonwealth's burden of proof.  <u>Commonwealth</u> v. <u>Connolly</u>, 394 Mass. 169, 173 (1985).  In any event, even if the evidence in the two cases veers from identicality, the Supreme Judicial Court did not set the facts in <u>Canty</u> as a floor for the strength of evidence required to overcome prejudice caused by improper opinion testimony.  Notably, the dissent cites no case in which opinion testimony of the type involved in the present case furnished grounds for reversal, particularly when ameliorated by the instruction administered in both <u>Canty</u> and this case.

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See Jackson v. Virginia, supra at 324 n.16; Commonwealth v. Latimore, supra at 677-678. In the circumstances of this case, to establish the defendant's guilt of OUI in violation of G. L. c. 90, § 24(1)(a)(1), the Commonwealth was required to prove that the defendant (1) operated a motor vehicle, (2) on a public way, (3) while under the influence of alcohol. Commonwealth v. Palacios, 90 Mass. App. Ct. 722, 728 (2016). At this defendant's trial, the first two elements, operation of a vehicle and public way, were stipulated to by the parties. Therefore, the only element the Commonwealth was required to prove was that the defendant was under the influence of alcohol. However, the Commonwealth need not prove that the defendant was drunk, only that alcohol diminished her ability to operate a motor vehicle safely. Commonwealth v. Stathopoulos, 401 Mass. 453, 458 (1988).

The evidence recited previously in part 2.a, supra, which supported our conclusion that the error in the trooper's testimony was not prejudicial, also supports our determination that the evidence was sufficient to support the defendant's conviction. In the light most favorable to the Commonwealth, the defendant exhibited classic symptoms of alcohol intoxication: her eyes were bloodshot and glassy; an odor of

alcohol emanated from her person; her speech was slurred; she admitted to drinking three beers; she parked her car "crooked[ly]" or "diagonally" across two parking spaces, contrary to instructions; she swayed and could not stand straight while being instructed on how to perform field sobriety tests; and she was unable to properly perform two out of three of the tests. From all of this, a rational jury were entitled to find the defendant guilty of OUI.

Relying on authority from outside the Commonwealth, see United States v. Horn, 185 F. Supp. 2d 530, 558 (D. Md. 2002), the defendant claims that the field sobriety tests she failed are not conclusive evidence of intoxication. Putting aside whether this is true, see Commonwealth v. Brown, 83 Mass. App. Ct. 772, 776-777 (2013) ("The responses of a person impaired by alcohol to [physical field sobriety] tests are incriminating 'not because the tests [reveal the] defendant's thoughts, but because [the defendant's] body's responses [differ] from those of a sober person'" [citation omitted]), or that such a proposition would go to the weight of the evidence and not its sufficiency, as we have recounted, there was abundant additional evidence of the defendant's impairment in addition to the field sobriety tests.

Finally, the defendant claims that the jury were required to speculate that her poor performance on the field sobriety

tests was caused by alcohol intoxication rather than her arthritis. "However, to indulge this argument, we would have to view the evidence in the light least favorable to the Commonwealth, which, of course, we cannot do." Commonwealth v. Arias, 78 Mass. App. Ct. 429, 435 (2010). See Commonwealth v. James, 30 Mass. App. Ct. 490, 491 n.2 (1991). See also Palmariello v. Superintendent of Mass. Correctional Inst. Norfolk, 873 F.2d 491, 493 (1st Cir.), cert. denied, 493 U.S. 865 (1989) (appellate court not obligated to "reread the record from a [defendant's] perspective"). The record evidence, and the reasonable inferences drawn therefrom, properly supported the defendant's conviction.

Judgment affirmed.

AGNES, J. (dissenting).  I write separately not because the evidence heard by the jury was insufficient to support the jury's verdict that the defendant, Judith A. Gallagher, was operating her motor vehicle on a public way while under the influence of alcohol (OUI) in violation of G. L. c. 90, § 24.  The evidence of the defendant's guilt was sufficient.  The question before us, however, is different.  We are asked to determine whether prejudice resulted from the judge's error in allowing the State police Trooper John Haidousis, the sole witness at trial, to give his opinion about the defendant's guilt, over the defendant's objection and in violation of Commonwealth v. Canty, 466 Mass. 535, 543-544 (2013),[1] by stating that she was "impaired to operate a motor vehicle."  The standard we must follow requires that we consider what effect, if any, the error had on the minds of the jurors, not on our own, in relation to the evidence as a whole.  Kotteakos v. United States, 328 U.S. 750, 764 (1946).  In particular, the standard is this:

> "[I]f, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very

_____

[1] "The balance we reach is that a lay witness in a case charging operation of a motor vehicle while under the influence of alcohol may offer his opinion regarding a defendant's level of sobriety or intoxication but may not opine whether a defendant operated a motor vehicle while under the influence of alcohol or whether the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely." Canty, supra at 544.

> slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of [the Legislature] . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected."

Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445-446 (1983), quoting from Kotteakos, supra at 764-765.

One way to measure whether the error in admitting lay witness opinion testimony, like that involved in this case, was prejudicial error is to compare the facts in the instant case to those in Canty, where the Supreme Judicial Court concluded that the error was nonprejudicial. 466 Mass. at 545. The comparison, in my view, does not assist the Commonwealth. In Canty, the court described the evidence of the defendant's guilt as "overwhelming" based on the following factors: (1) the officer's observations of the defendant's "erratic driving," (2) the defendant's inability to put his vehicle into "park" when directed to do so by the officer, (3) the defendant's difficulty in retrieving his identification from his wallet, (4) the defendant's "poor" performance on two field sobriety tests, (5) the defendant's admission that he had consumed four beers, and (6) the discovery of a "half-empty" bottle of liquor in the defendant's vehicle. Id. at 537, 545. In the present case, on

the other hand, the evidence, while sufficient to support a jury verdict of guilty, was not overwhelming.

Here, the evidence was that the defendant arrived at a State police OUI checkpoint on Route 33 in Chicopee at about 12:15 A.M. and was directed to a secondary location to speak to Trooper Haidousis. She was the sole occupant of the vehicle. She was told her to park her vehicle in a marked space in a parking lot used by an adjoining business. The testimony was that the defendant "parked crooked across the, uh, lines, not directly in a space." In Canty, by contrast, a local police officer was on a main street in a marked cruiser when he saw the defendant's vehicle pass by and "come within four inches of striking the curb." Id. at 536. The officer "followed the motor vehicle for approximately three-quarters of a mile and observed it cross over the white fog line on the shoulder of the road and 'drift back' and cross the double yellow line at the center of the road." Ibid. Additionally, in Canty, when the officer activated the blue lights on his cruiser, the defendant did not apply the brakes for fifteen to twenty seconds, and then "traveled another fifteen to twenty seconds before pulling over to the side of the road." Ibid.

In the present case, there is no evidence that the defendant did not put her vehicle in park and turn off the engine when directed to do so. In Canty, by contrast, the

defendant did not put his vehicle in park after he was pulled over. Ibid. "Because the vehicle's reverse lights remained on, [the police officer] used his cruiser's public address system to instruct the driver to put the truck 'in park.' The reverse lights remained on, so [the police officer] left his cruiser and approached the defendant, who was alone in the motor vehicle, again instructing him to put the truck 'into park.' The defendant responded that it was not his vehicle." Ibid.

In Canty, the court noted that "[w]hen [the police officer] asked the defendant for his license and registration, the defendant had difficulty retrieving his identification from his wallet." Id. at 537. In the present case, the defendant had no difficulty in producing her license for Trooper Haidousis.

In Canty, the defendant was asked to perform two of the three field sobriety tests performed by the defendant in the present case: the "nine-step walk and turn" test and the "one-leg stand" test. Ibid. In Canty, the officer conducting the tests testified that "[w]hen [the defendant] stepped out of the vehicle, [he] tripped over his own feet and 'almost stumbled.'" Ibid. When performing the nine-step walk and turn test, the defendant in Canty "walked at a complete forty-five degree angle, almost like a severe wind was blowing him to the side." Ibid. When performing the one-leg stand test, "the defendant put his foot down three separate times, and raised his arms to

maintain balance." Ibid. In the present case, there is no evidence that the defendant had any difficulty exiting from her vehicle. The trooper testified that the defendant followed his instructions by assuming the correct position and not beginning until instructed to do so. In performing the test, the defendant took seven steps forward and six steps back although she stepped off of the line and did not keep her feet heel to toe. When performing the one-leg stand, which requires that a person hold one leg six inches off of the ground and, while keeping her arms by her sides, count aloud from one one-thousand to thirty one-thousand, the defendant put her foot down after about eleven seconds and did not count aloud. There also is evidence that the defendant successfully completed a third test which the trooper described as being able to recite the alphabet.

In terms of similarities between the facts in Canty and those in the present case, there is evidence that both defendants admitted to having consumed alcohol (three beers for the defendant here and four beers for the defendant in Canty) and both exhibited physical signs often associated with intoxication (odor of an alcoholic beverage coming from their person and bloodshot eyes).[2] However, in Canty, the court noted

---

[2] In the present case, the trooper also testified that the defendant's speech was "a bit slurred." When asked for details,

that a "half-empty" bottle of liquor was found on the floor of the front passenger seat of the defendant's vehicle.  Ibid.

There is no precise formula for measuring what effect, if any, erroneously admitted evidence has on the minds of jurors. However, using the facts in Canty as a guide, the present case is not one in which there was overwhelming evidence that the defendant operated her vehicle while impaired by alcohol. Considering that the evidence portion of the trial consisted of only thirty-seven pages of transcript, made up entirely of the testimony of Trooper Haidousis, I am unable to say with conviction that his erroneously admitted opinion that the defendant was "impaired to operate a motor vehicle" either had no effect or only a slight effect on the minds of the jury.[3]

---

the trooper could not recall any specific words that were slurred by the defendant, and did not observe any evidence of soiled clothing, fumbling, bruises, or scratches.

[3] As a result of a stipulation by the parties, the only issue before the jury was whether the Commonwealth proved beyond a reasonable doubt that the defendant was under the influence of alcohol when operating her vehicle.  The judge instructed the jury on the basis of the model jury instruction that "[a] person is under the influence of alcohol, if she has consumed enough alcohol to reduce her ability to operate a motor vehicle safely, by decreasing her alertness, judgment and ability to respond promptly.  It means that a person has consumed enough alcohol to reduce her mental clarity, self-control and reflexes and thereby left her with a reduced ability to drive safely.  The Commonwealth is not required to prove that [the defendant] actually drove in an unsafe or erratic manner, but is required to prove that her ability to drive safely was diminished by alcohol."  The judge appropriately added that the jury may "rely on [their] own experience and common sense about the effects of

See, e.g., Commonwealth v. Federico, 425 Mass. 844, 853 (1997);
Commonwealth v. Quinn, 469 Mass. 641, 650 (2014).

There is another feature of this case that I believe
deserves attention.  In Canty, the Supreme Judicial Court
reiterated the long-standing rule that police officers, like
other lay witnesses, may "offer their opinion of an individual's
sobriety."  466 Mass. at 540, citing Commonwealth v. Jones, 464
Mass. 16, 17 n.1 (2012) (police officer in prosecution for OUI
may testify to defendant's "apparent intoxication").  The court
explained, supra at 541, that the reason for this rule is that a
lay witness's opinion about another person's sobriety or
intoxication is based on reasoning from everyday life
experiences as opposed to the opinion of an expert witness,
which is based on scientific, technical, or other specialized

---

alcohol," and that the jury "should consider any believable
evidence about the defendant's alleged consumption of alcohol,
as well as her appearance, condition and behavior at that time."
Finally, the judge told jurors that they "heard testimony of an
opinion about [the defendant's] sobriety," and that they "may
consider any opinion [they had] heard and accept it or reject
it."

In Canty, 466 Mass. at 545, the court observed that the
judge's instruction informing the jury that they could accept or
reject any opinion testimony had a bearing on whether the
erroneous admission of the police officer's opinion that the
defendant's ability to drive was impaired by alcohol, i.e., an
opinion on the ultimate issue, was prejudicial.  If the police
officer should not be allowed to give such an opinion, an
instruction to the jury that they may accept or reject it hardly
seems curative.

knowledge.[4]  If, as the Canty court explained, there is a
distinction between permissible lay witness opinion testimony by
a police officer about whether a driver is intoxicated and her
level of impairment in an OUI case, see Mass. G. Evid. § 701
(2017), and an expert witness opinion in an OUI case that is
based on "scientific, technical, or other specialized
knowledge," Mass. G. Evid. § 702 (2016), what are we to make of
the testimony by the State police trooper in this case that was
based on "standardized field sobriety test[s]"?

---

[4] "We begin by noting that an opinion regarding a
defendant's sobriety is a lay opinion, not an expert opinion,
and the reasons for admitting a lay opinion are wholly different
from the reasons for admitting an expert opinion.  An expert's
opinion is admissible only where an expert possesses scientific,
technical, or other specialized knowledge that will assist the
jury in understanding a fact in issue, and where the expert has
applied reliable principles and methods to the facts of the
case. . . .  A lay opinion, in contrast, is admissible only
where it is (a) rationally based on the perception of the
witness; (b) helpful to a clear understanding of the witness's
testimony or the determination of a fact in issue; and (c) not
based on scientific, technical, or other specialized
knowledge. . . .  While an expert opinion is admissible only
where it will help jurors interpret evidence that lies outside
of common experience, . . . a lay opinion is admissible only
where it lies within the realm of common experience, because a
lay opinion is relevant only where, as with sobriety, the
principal objective symptoms are so well known that we consider
the lay opinion to have probative value. . . .  Even where a
witness has described the defendant's appearance, manner, and
conduct (e.g., bloodshot eyes, slurred speech, and unsteady
gait), a lay opinion by a percipient witness regarding the
defendant's intoxication is still of probative value because
such an opinion, especially as to the level of intoxication, may
be shaped by observations too numerous or subtle to mention."
Canty, supra at 541-542 (quotation marks omitted).

The bulk of the trooper's testimony with respect to the defendant's impairment due to the consumption of alcohol consisted of his explanation of the components of the field sobriety tests and the defendant's performance on those tests. There was no objection to this testimony. Indeed, there were many questions asked on cross-examination about field sobriety tests, including the trooper's training to look for "certain clues," the "instructional phase" and the "performance phase" of the tests, the "Standardized Field Sobriety Testing Manual," and whether people over the age of sixty-five or those with back, leg, or inner ear problems should take the tests.

The question I raise is not whether police officers, as witnesses, should be singled out for special treatment simply because they are law enforcement officers. See Commonwealth v. Desmond, 345 Mass. 774, 774 (1963). And I do not suggest that police officers should be prevented from or limited in testifying about a person's "sense of balance, coordination, and acuity of mind in understanding and following simple instructions." Commonwealth v. Sands, 424 Mass. 184, 188 (1997). See Commonwealth v. Schutte, 52 Mass. App. Ct. 796, 800-801 (2001); Commonwealth v. Brown, 83 Mass. App. Ct. 772, 774 n.1 (2013). See also Commonwealth v. Brennan, 386 Mass. 772, 779 (1982) (field sobriety tests do not implicate privilege against self-incrimination under Fifth Amendment to United

States Constitution or art. 12 of Massachusetts Declaration of Rights because they do not force subject to reveal her "knowledge or thoughts"). Instead, the question is whether steps should be taken to ensure that lay witness opinion testimony that a person is under the influence of alcohol is not misunderstood by jurors as testimony based on scientific, technical, or other specialized knowledge. See, e.g., United States v. Horn, 185 F. Supp. 2d 530, 560 (D. Md. 2002). See also Commonwealth v. A Juvenile, 21 Mass. App. Ct. 121, 125 (1985) (trial judges have discretion to fashion specific instructions to assist jury in determining credibility of classes of witnesses "provided these do not create imbalance, or indicate the judge's belief or disbelief in the given witness").

In the present case, the judge instructed the jury that they "may consider any opinion [they] have heard and accept it or reject it." However, if the opinion by Trooper Haidousis was inadmissible for the reasons explained in Canty, 466 Mass. at 544, this instruction was not accurate, and certainly not calculated to inform the jury that the basis of the witness's opinion was not scientific, technical, or other specialized knowledge. Compare Mass. G. Evid. § 702 (2017) with Mass. G. Evid. § 701 (2017). Perhaps consideration should be given to the use of an instruction that informs the jury that a police officer's opinion about a driver's performance on field sobriety

tests like those used in this case is not an expert opinion based on scientific, technical, or other specialized knowledge but, rather, testimony based on the officer's experience, which the jury may accept or reject.[5]

---

[5] See State v. Gracia, 51 Conn. App. 4, 19 (1998). In Gracia, an OUI case in which the nine-step walk and turn test and the one-leg stand test were administered to the defendant, the trial judge told the jury that "roadside sobriety tests were not scientific evidence, and that it should consider the observations made during the tests and use its common experience in determining whether the defendant was intoxicated." Ibid.

The police, of course, are permitted to videotape a driver's performance of field sobriety tests, which may be the most reliable evidence of a person's "sense of balance, coordination, and acuity of mind in understanding and following simple instructions." Sands, 424 Mass. at 188. See Commonwealth v. Mahoney, 400 Mass. 524, 528 (1987). At one time, some police departments routinely videotaped the booking process in OUI cases. See, e.g., Commonwealth v. Cameron, 25 Mass. App. Ct. 538, 543 (1988). See also Commonwealth v. Carey, 26 Mass. App. Ct. 339, 340 (1988) ("When relevant, videotapes have the virtue of presenting an accurate, vivid, and fair representation of the way people acted or spoke or how things looked when the tape was recorded"). Today, there is technology available to (and in some cases used by) the police that would permit the videotaping of a driver's performance of sobriety tests in the field.